CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Proposed Counsel for 753 Ninth Ave Realty, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :   Chapter 11
                                                :
753 NINTH AVE REALTY, LLC,                      :   Case No.
                                                :
                                                :
                  Debtor.                       :
                                                :
------------------------------------------------------------x

### AFFIDAVIT OF MARINA KOUSTIS
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK    )
                     )ss:
COUNTY OF NEW YORK   )

**MARINA KOUSTIS,** being duly sworn, deposes and says:

1.  I am a manager of 753 Ninth Ave Holdings, LLC, sole member of 753 Ninth Ave Realty, LLC ("753 Ninth" or the "Debtor"), debtor and debtor-in-possession herein. In this capacity, I am familiar with the day-to-day operations and financial affairs of the Debtor.

2.  I submit this affidavit pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern Eastern District of New York (the "Local Rules") in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date"). Except as otherwise indicated, all facts set forth in

this affidavit are based upon personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations. If called upon to testify, I would testify competently to the facts set forth in this Affidavit. I am authorized to submit this Affidavit on behalf of the Debtor.

## I. INFORMATION REQUIRED BY LOCAL RULE 1007-2

3. Local Rule 1007-2 requires certain information related to the Debtor, which is set forth below and in the schedules annexed hereto. Unless otherwise indicated, the financial information contained herein is unaudited.

4. <u>Local Rule 1007-2(a)(1)</u>: The nature of the Debtor's business and the circumstances leading to the Debtor's filing of its Chapter 11 case are as follows:

753 Ninth has owned and operated a mixed use property at 753 Ninth Ave, New York, New York since 1995 (the "753 Property"). My sister Sofia Koustis and my mother Evanthia Koustis, reside at the property located at 212 East 72nd Street, New York, New York (the "212 Property"; together with the 753 Property, the "Properties") since 1992. The 212 Property is owned by 212 East 72nd Street, LLC ("212 East").

Prior to early 2014, the Properties were secured by mortgages in favor of RCG Debt IV REIT, L.P. (the "Previous Lender"), the foreclosure of which mortgages was imminent. Thus, in or about November 2013, the Debtor retained Suzuki Capital LLC ("Suzuki Capital") and, in particular, Sam Suzuki ("Suzuki") to act as its mortgage broker to procure a loan to pay off the Previous Lender. Ultimately, Suzuki Capital and Suzuki elected to place two (2) loans with Doral Bank in the aggregate amount of $8,100,000.00 (the "Loans"), consisting of a loan to the Debtor in the amount of $4.6 million, and a loan to 212 East in the amount of $3.5 million. Despite the fact that the 212 Property had been used solely as a residential property since 1992, Doral Bank,

2

Suzuki Capital and Suzuki treated both the Loans as commercial loans, thereby avoiding the statutory requirements of providing a residential home mortgage.

The Loans were scheduled to close during the morning of February 22, 2014. In the late hours of February 26, 2014, the Debtor received, for the first time, a copy of Doral Bank's commitment letter, which included, for the first time, a requirement that both of the Properties be managed by Royal Host Realty, LLC ("Royal Host"), an entity wholly owned by Suzuki or Suzuki Capital. At all times prior to the Loans, the Properties were self-managed. At no point in time prior to receiving the commitment letter were the Debtor or 212 East ever made aware that Doral Bank would require Royal Host to be the manager of the Properties.

Upon information and belief, it was the plan of Doral Bank, Suzuki Capital, Suzuki and Royal Host that Royal Host obtain total and complete control over the Properties. However, the commitment letter did not detail the extent of the control that Royal Host would have as manager over the Properties. In fact, the Debtor did not see the alleged management agreement until the closing of the Loans. At the closing, the Debtor and 212 East were advised by Suzuki on behalf of Suzuki Capital and Royal Host, as well as representatives of Doral Bank, that the management agreement was a "standard agreement". As the Debtor and 212 East were in a precarious position with the Previous Lender and needed to close on the Loans to avoid foreclosure, the statements and representations of Suzuki, Suzuki Capital, Royal Host and Doral Bank that it was a "standard agreement" were relied upon in entering into the management agreement at closing.

Upon information and belief, Doral Bank, Suzuki and Suzuki Capital underwrote the Loans in such a manner as to provide for the 212 Property to be rented out, despite that they all knew that this was the primary residence of my sister and my mother. The Debtor and 212 East were never told that the Loans were underwritten in such manner and, instead, were advised that the rental

3

income from the 753 Property would cover the debt service of the Loans. As the Debtor and 212 East had always managed the Properties, they agreed to the Loans with the understanding that the income from the 753 Property would cover the debt service. Despite the foregoing, Doral Bank, Suzuki, Suzuki Capital and Royal Host all knew that the Loans came with the caveat that Royal Host would be the manager of the Properties and, as such, would incur a management fee making it impossible for the 753 Property to carry the debt service of the Loans.

Immediate subsequent to the closing, Royal Host began running the Properties in such a manner that prevented the obligations under the Loans to be met, including but not limited to, paying itself a management fee before paying any of the obligations to manage the Properties, failing to make the monthly mortgage payments to Doral Bank despite receiving rental payments to cover the debt service, failing to pay the insurance for the Properties despite receiving rental payments to cover the cost of insurance and failing to actively market vacant units at the 753 Property.

Ultimately, the Debtor and 212 East were able to successfully remove Royal Host as manager of the Properties in or around August 2014; however, the damage had already been done-- as a result of the actions of Royal Host, the Debtor and 212 East were behind on their debt obligations to Doral Bank. This ultimately led to an action by 72nd Ninth LLC (the "Lender"), successor-in-interest to Doral Bank, to foreclose its mortgages against the Properties, as well as an action by Royal Host for alleged unpaid management fees and counterclaims and a third-party action by the Debtor and 212 East against Royal Host, Suzuki Capital, Suzuki and Doral Bank for their damages respect to the foregoing. These litigations are further discussed below. A hearing is scheduled in the foreclosure action on April 25, 2019 to appoint a receiver. As a result, the Debtor's present bankruptcy filing was necessitated at this time.

5. <u>Local Rule 1007-2(a)(2)</u>: Not applicable because the Debtor's case was not originally commenced under Chapter 7 or 13.

6. <u>Local Rule 1007-2(a)(3)</u>: Not applicable because no committee was organized prior to the Petition Date.

7. <u>Local Rule 1007-2(a)(4)</u>: Schedule 1 hereto lists the following information with respect to each of the holders of the Debtor's twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), telephone number, the name(s) of persons(s) familiar with the Debtor's accounts if known, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

8. <u>Local Rule 1007-2(a)(5)</u>: Schedule 2 hereto provides the following information with respect to each of the holders of the Debtor's five (5) largest secured claims: the creditor's name and address (including the number, street, apartment or suit number, and zip code, if not included in the post office address), the amount of the claim, a brief description of the claim, an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

9. <u>Local Rule 1007-2(a)(6)</u>: Schedule 3 hereto is a summary of the Debtor's assets and liabilities.

10. <u>Local Rule 1007-2(a)(7)</u>: Not applicable because none of the securities of the Debtor are publicly held.

11. <u>Local Rule 1007-2(a)(8)</u>: Not applicable because none of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity.

12. <u>Local Rule 1007-2(a)(9)</u>: Not applicable since there are no premises owned, leased or held under other arrangement from which the Debtor operates its business.

13. <u>Local Rule 1007-2(a)(10)</u>: Schedule 4 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

14. <u>Local Rule 1007-2(a)(11)</u>: As set forth above, there are two active state court litigations involving the Debtor, the foreclosure action commenced by the Lender and the action and counterclaims as between Royal Host, the Debtor, 212 East, Suzuki Capital, Suzuki and Doral Bank.

As to the foreclosure action, on or about January 19, 2016, the Lender commenced an action seeking to foreclosure the mortgages as against the 753 Property and the 212 Property. The defendants in the foreclosure action filed a counterclaim against the Lender to which the Lender replied in March 2016. The Lender's motion for summary judgment was granted by the state court, which has the subject of an unsuccessful appeal. On September 12, 2018, the referee in the foreclosure action filed his report for amounts due. By stipulation and order dated September 14, 2018, the parties agreed to the amounts set forth in the referee's report. However, and importantly, the Debtor, 212 East and the guarantors in the foreclosure action expressly reserved the right to oppose the imposition of default interest. Thus, the parties agreed to the mathematical calculations set forth in the referee's report but not to the Lender's entitlement to default interest. The Lender's motion to confirm the referee's report, together with a motion to have a temporary receiver appointed, are both returnable on April 25, 2019 in the State Court.

Royal Host commenced an action against the Debtor and 212 East seeking payment of

alleged management fees due and owing to it under the management agreement described above. The Debtor and 212 East interposed counterclaims against Royal Host as well as cross-claims against Suzuki Capital, Suzuki and Doral Bank for the damages they sustained as a result of the improper conduct of those entities described above.  As a result of the failure of Royal Host and the cross-claim defendants to comply with discovery orders, the Court granted the motion of the Debtor and 212 East to strike the pleadings of Royal Host and the cross-claim defendants. The Court denied the Debtor and 212 East's request for default judgment without prejudice. Royal Host and the cross-claim defendants' motion to renew their opposition to the motion to strike was thereafter denied by the Court. The Debtor and 212 East intend on refiling their motion for default judgment.

15.    Local Rule 1007-2(a)(12): Schedule 5 hereto provides a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

16.    Local Rule 1007-2(b)(1): Schedule 6 hereto provides the estimated amount of weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date.

17.    Local Rule 1007-2(b)(2): Not applicable since no amounts are proposed to be paid to members of the Debtor for the thirty (30) day period following the Petition Date.

18.    Local Rule 1007-2(b)(3): Schedule 7 hereto provides a schedule of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing for the thirty (30) day period following the Petition Date.

## II. SUMMARY OF FIRST DAY MOTIONS[1]

19.     To enable the Debtor to operate effectively and to minimize adverse effects from its chapter 11 filing, the Debtor has requested or will be requesting various relief in "first day" motions (the "First Day Motions") filed with the Court and described below. In connection with preparing for this case, I have reviewed each of the First Day Motions referenced below. The First Day Motions were prepared with my input and assistance. I believe that the information contained in the First Day Motions is accurate and correct. As set forth more fully below, I believe that the entry of orders granting the relief requested in these motions is critical to the Debtor's ability to preserve the value of its estate and succeed in its reorganization efforts.

A.    *Debtor's Motion for Emergency Use of Cash Collateral and for Interim and Final Orders (1) Authorizing use of Cash Collateral, (2) Granting Replacement Liens as Adequate Protection to Pre-Petition Secured Lenders, (3) Scheduling Interim and Final Hearings on Cash Collateral and (4) Granting Related Relief*

20.     The Debtor has filed a motion seeking to use the cash collateral of the Lender on an emergency, interim and final basis. The Debtor's use of cash collateral is necessary to pay its usual and ordinarily operating expenses while the Debtor reorganizes its business operations. Absent the use of cash collateral to pay expenses necessary to operate the 753 Property, the Debtor's case is doomed to failure. The Debtor is seeking approval of emergency use of cash collateral in the amount of $47,287.

21.     As set forth in the Cash Collateral Motion, the Debtor seeks to grant Replacement Liens to the Lender to the extent in the diminution of the value of such entity's collateral. In all events, the Replacement Liens shall be subordinate to the payment of U.S. Trustee fees in the Debtor's case and a carve out for the Debtor's professionals of $250,000 (the professional fee

---

[1] Capitalized terms used but not defined in this section have the meanings given them in the relevant First Day Motion.

8

carve-out is not sought in the order approving emergency relief). Moreover, the Replacement Liens shall not extend to the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. As additional adequate protection for the use of Cash Collateral, the Debtor proposes to pay to the Lender the monthly interest payments to which it is entitled under the parties' loan documents, amounting to $23,958 per month.

22.     The Debtor requires the immediate use of Cash Collateral in order to avoid immediate and irreparable harm to its business.

B.      *Motion of the Debtor for Entry of Interim and Final Orders Pursuant to 11 U.S.C. § 366 (I) Deeming Utilities Adequately Assured of Future Performance, (II) Establishing Procedures for Determining Adequate Assurance of Payment, and (III) Prohibiting Utilities from Altering, Refusing or Discontinuing Service*

23.     In connection with the operation of its business, the Debtor regularly incurs expenses for gas, electricity, telephone and internet services provided by various Utility Providers. To provide adequate assurance of payment for future services, the Debtor proposes to grant the Utility Providers a security deposit based on two weeks' worth of the average monthly billing, to be paid to the Utility Providers by the Debtor.

24.     I believe that the Proposed Adequate Assurance constitutes sufficient adequate assurance of payment under the circumstances and should be approved. However, if the Utility Providers disagree with the Debtor's analysis, the Debtor has proposed the Adequate Assurance Procedures for the Utility Providers to request additional adequate assurance. I believe that the Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's chapter 11 case, while still protecting the rights of the Utility Providers.

25.     Should any Utility Provider refuse or discontinue service, even for a brief period of

time, I believe that the Debtor's ability to preserve and maximize the value of its estate could be severely and irreparably harmed. For these reasons, I believe that it is critical that the utility services continue uninterrupted and that the Utility Providers be prohibited from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance.

C.  *Motion for an Order Authorizing 753 Ninth Ave Realty, LLC to enter into a Commercial Premium Finance Agreement with Stetson Insurance Funding and Approving the terms thereof*

26. Prior to the Petition Date, in the ordinary course of business the Debtor entered into a Commercial Premium Finance Agreement with Stetson Insurance Funding, which provides for the Debtor to pay in monthly installments the premiums in connection with its property insurance and general liability insurance.

27. In view of the importance of maintaining insurance coverage with respect to the Property, the Debtor believes that it would be in the best interests of its estate and creditors to enter into the Premium Finance Agreement to enable the Debtor to finance the insurance premiums under the Policies. The Policies whose premiums are proposed to be financed under the Finance Agreement provide the Debtor with essential insurance coverage. Any interruption in the insurance coverage would expose the Debtor and its estate to serious risks associates with lapses in coverage. Moreover, the operating guidelines by the office of the United States Trustee require that the Debtor maintain insurance coverage throughout this chapter 11 case.

28. The Debtor believes that maintaining continued and uninterrupted insurance coverage under the terms and conditions provided by the Policies is in the best interest the Debtor and its estate. Accordingly, the Debtor requests authority to enter into a Premium Finance Agreement with Stetson

effective on the date of signing the Premium Finance Agreement on substantially the same terms as are set forth in the agreement annexed hereto as Exhibit "A".

29.    In furtherance of the reorganization efforts, the Debtor respectfully requests that the orders granting the relief requested in the First Day Motions be entered.

        753 NINTH AVE REALTY, LLC

        By: 753 NINTH AVE HOLDINGS, LLC
        Sole Member


        By: s/Marina Koustis
           Marina Koustis
           Manager

Sworn to on the
15th day of April, 2019

s/Bonnie Pollack
Notary Public
Commission Expires: 3/13/2022
Qualified in Nassau County
Notary Public, State of New York No. 4962169

## Schedule 1

### 20 Largest Unsecured Claims (Excluding Insiders)

**SEE ATTACHED**

Fill in this information to identify the case:
Debtor name: 753 Ninth Ave Realty, LLC
United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK
Case number (if known):

☐ Check if this is an amended filing

## Official Form 204
### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim — Total claim, if partially secured | Amount of claim — Deduction for value of collateral or setoff | Amount of claim — Unsecured claim |
|---|---|---|---|---|---|---|
| AAA Five Star Construction<br>330 Ocean Parkway<br>Brooklyn, NY 11218 | | Repairs and Maintenance | | | | $6,000.00 |
| Con Edison<br>Cooper Station<br>P.O. Box 138<br>New York, NY 10276 | | Utility Bill | | | | $119.71 |
| Drain Kleen<br>1021 E. Gun Hill Road<br>Bronx, NY 10469 | | Repairs and Maintenance | | | | $700.00 |
| EZ Restoration<br>8411 Liberty Avenue<br>North Bergen, NJ 07047 | | Repairs and Maintenance | | | | $1,500.00 |
| Kishner Miller Himes P.C.<br>Attn: Ryan Miller, Esq.<br>420 Lexington Ave., Suite 300<br>New York, NY 10170 | | Legal Fees | | | | $32,839.50 |
| Macfelder Plumbing<br>610 11th Avenue<br>New York, NY 10036 | | Repairs and Maintenance | | | | $898.00 |
| Miguel Rios<br>724 10th Avenue<br>New York, NY 10019 | | Repairs and Maintenance | | | | $1,000.00 |
| NYC Water Board<br>P.O. Box 11863<br>Newark, NJ 07101 | | Utility Bill | | | | $54,752.50 |
| Roto Rooter Services Co.<br>5672 Collections Center Dr.<br>Chicago, IL 60693 | | Repairs and Maintenance | | | | $5,832.02 |

Debtor   **753 Ninth Ave Realty, LLC**
         Name

Case number *(if known)*

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Sky Locksmith 1574 First Avenue New York, NY 10028 | | Trade | | | | $1,500.00 |

Schedule 2

5 Largest Secured Claims

| Creditor | Amount of Claim | Description of Claim | Value of Collateral Securing Claim | Lien or Claim Disputed (Y/N) |
|---|---|---|---|---|
| 72nd Ninth LLC<br>825 Third Ave, 37th Floor<br>New York, New York 10022 | $15,601,486.50 as of July 18, 2018[2] | Mortgage Debt | | Y |
| 72nd Ninth LLC<br>825 Third Ave, 37th Floor<br>New York, New York 10022 | $6,688,207.94 as of July 18, 2018[3] | Mortgage Debt | | Y |
| NYC Dept of Finance<br>59 Maiden Lane<br>19th Floor<br>New York, New York 10038 | $639,872.68 | Real Estate Taxes | | Y |
| Criminal Ct-City of NY<br>c/o District Attorney of New York County<br>One Hogan Place<br>New York, New York 10013 | $5,000.00 | Judgment against Prior Owner | | Y |
| Admiral Energy Corp.<br>444 3rd Avenue<br>Brooklyn, New York 11215 | $4,136.32 | UCC Financing Statement 7/215/15 | | N |

---

[2] Per Stipulation and Order dated September 14, 2018, the Debtor reserved the right to dispute the Lender's entitlement to default interest in the amount of $4,020,722.16 as of July 18, 2018.

[3] Per Stipulation and Order dated September 14, 2018, the Debtor reserved the right to dispute the Lender's entitlement to default interest in the amount of $3,070,662.28 as of July 18, 2018. This obligation, owed by 212 East 72nd Street, LLC, is secured by the Debtor's property but is non-recourse as to any other assets.

13

**Schedule 3**

**Summary of Debtor's Assets and Liabilities**

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following unaudited financial information is the latest available information and reflects the Debtor's financial condition as of the Petition Date.

Total Assets:        $13,500,499.51

Total Liabilities:    $16,367,400.43

## Schedule 4

**Location of Debtor's Significant Assets, Books
and Records and Assets Outside of U.S.**

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Books and Records | 212 East 72nd Street, New York, New York 10021 | N/A |
|  | Storage Unit 112 Bruckner Boulevard Bronx, New York 10454 | N/A |
| Real Property | 753 Ninth Avenue, New York, New York | N/A |

## Schedule 5

### Senior Management

| Name | Title | Tenure | Experience/Responsibilities |
|---|---|---|---|
| Sofia Koustis | Member | 1995 to date | General Management |
| Marina Koustis | Member | 1995 to date | General Management |

## Schedule 6

**Estimated Weekly Payroll**

Pursuant to Local Rule 1007-2(b)(1), the estimated amount of gross weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is approximately $100 per week.

## Schedule 7

### Cash Receipts and Disbursements, Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid (other than professional fees) for the 30-day period following the Petition Date.

| | |
|---|---|
| **Cash Receipts** | $51,746 |
| **Cash Disbursements** | $47,287 |
| **Net Cash Gain (Loss)** | $4,459 |
| **Unpaid Obligations (excluding professional fees)** | $ |
| **Unpaid Receivables (excluding professional fees)** | $ |