CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for 753 Ninth Ave Realty LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :
753 NINTH AVE REALTY LLC,                                          :    Case No. 19-11201 (MKV)
                                                                   :
                                                                   :
                    Debtor.                                        :
                                                                   :
-------------------------------------------------------------------x

## CHAPTER 11 PLAN

DATED AS OF JULY 23, 2019

## TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS.................................................................................................1

ARTICLE II       SUMMARY OF PLAN .................................................................................10

ARTICLE III      TREATMENT OF ADMINISTRATIVE CLAIMS AND FEE
                 CLAIMS ........................................................................................................10

ARTICLE IV       CLASSIFICATION OF CLAIMS .................................................................12

ARTICLE V        TREATMENT OF CLAIMS .........................................................................13

ARTICLE VI       ACCEPTANCE OR REJECTION OF PLAN................................................15

ARTICLE VII      IMPLEMENTATION OF THE PLAN ..........................................................16

ARTICLE VIII     CLAIM OBJECTIONS AND DISTRIBUTIONS ...........................................17

ARTICLE IX       EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................21

ARTICLE X        EFFECT OF THE PLAN ON CLAIMS.........................................................23

ARTICLE XI       CONDITIONS TO CONFIRMATION AND CONSUMMATION ...............25

ARTICLE XII      RETENTION OF JURISDICTION................................................................25

ARTICLE XIII     ADMINISTRATIVE PROVISIONS .............................................................27

753 Ninth Ave Realty LLC (the "Debtor") hereby proposes the following Chapter 11 Plan (the "Plan") in connection with its chapter 11 case.

Reference is made to the Disclosure Statement, dated July 23, 2019 (the "Disclosure Statement"), for a discussion of the Debtor's assets, the administration of the Debtor's case and for a summary and analysis of the Plan.

All creditors entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan. Documents referenced in the Plan and/or the Disclosure Statements are also available for review.

## ARTICLE I - DEFINITIONS

The capitalized terms used herein shall have the meanings set forth below. Terms used herein and not otherwise defined shall have the meanings given to them in the Bankruptcy Code or the Bankruptcy Rules unless the context requires otherwise.

**1.1.** **212 East** means 212 East 72nd Street, LLC, an entity owned by relatives of the principals of the Debtor.

**1.2.** **212 Mortgage** means the mortgage against the 212 Property dated February 27, 2014, to secure payments under the 212 Note.

**1.3.** **212 Note** means the Severed Note B dated February 27, 2014 made by 212 East in favor of Doral Bank in the original principal amount of $3,500,000.

**1.4.** **212 Property** means the real property owned by 212 East, located at 212 East 72nd Street, New York, New York.

**1.5.** **753 Mortgage** means the mortgage against the 753 Property dated February 27, 2014, to secure payment under the 753 Note.

**1.6.** **753 Note** means the Consolidated Note dated February 27, 2014 made by the Debtor in favor of Doral Bank in the original principal amount of $4,600,000.

1.7.    **753 Property** means the real property owned by the Debtor, located at 753 Ninth Avenue, New York, New York.

1.8.    **Administrative Bar Date** means the date which shall be thirty (30) days after the Confirmation Date, by which proofs of claim or applications for payment of Administrative Claims arising subsequent to April 18, 2019 and before the Confirmation Date must be filed with the Court, with copies to the parties listed in Section 13.11 of this Plan.

1.9.    **Administrative Claim** means a Claim for a cost or expense of administration of the Chapter 11 Case, other than a Fee Claim, allowable under section 503(b) of the Bankruptcy Code, and referred to in section 507(a)(1) of the Bankruptcy Code, including:  (a) the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case of preserving the Estate and operating the business of the Debtor;  (b) wages, salaries or commissions for services incurred after the Petition Date; and (c) all fees and charges assessed against the Estate of the Debtor under Chapter 123 of title 28, United States Code.

1.10.    **Allowed** means, with respect to any Claim, a Claim, subject to Section 8.1 of the Plan, (i) which is scheduled as undisputed, noncontingent and liquidated in the Schedules, or any amendment to the Schedules, and as to which no proof of Claim has been timely filed; (ii) as to which a proof of Claim has been timely filed in a liquidated, non-contingent amount and either (a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which is an Administrative Claim to which no objection has been asserted, or which has been approved by Final Order of the Court.  An Allowed Claim: (x) includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires; and (y) shall be net of any valid setoff or recoupment amount

2

against such Claim based on a valid offset or recoupment right of the Debtor, which valid setoff or recoupment amount shall be deemed to have been setoff or recouped in accordance with the provisions of this Plan.  Unless otherwise specified herein or by order of the Court, Allowed Claims shall not, for any purpose under the Plan, include interest on such Claims on or after the Petition Date.

**1.11.**  **Ballot** means the ballot distributed to each eligible claimant by the Balloting Agent, on which ballot such claimant may, inter alia, vote for or against the Plan.

**1.12.**  **Ballot Deadline** means the date and time set by the Court by which the Balloting Agent must receive all Ballots.

**1.13.**  **Balloting Agent** means Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York, NY 11530.

**1.14.**  **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

**1.15.**  **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and any applicable local rules of the Court as now in effect or hereafter amended.

**1.16.**  **Bar Date** means July 1, 2019, the date established by order of the Bankruptcy Court dated May 21, 2019 as the last date by which proofs of claim arising prior to the Petition Date must have been filed with the Court.

**1.17.**  **Bidding Procedures** means the procedures for conducting the Sale, annexed to the Disclosure Statement as Exhibit "A" thereto.

**1.18.**  **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.19.    Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

**1.20.    Chapter 11 Case** means the chapter 11 case of the Debtor pending before the Court.

**1.21.    Claim** means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.22.    Class** means a group of Claims as described in Articles III and IV of the Plan.

**1.23.    Confirmation Date** means the date the Court enters the Confirmation Order on its docket.

**1.24.    Confirmation Hearing** means the hearing by the Court to consider confirmation of the Plan.

**1.25.    Confirmation Order** means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.26.    Court** means the United States Bankruptcy Court for the Southern District of New York, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

**1.27.    Debtor** means 753 Ninth Ave Realty LLC.

**1.28.    Debtor Contribution** means any monies required to be contributed to the Distribution Fund by the Debtor in order to make payments upon Allowed Administrative Claims, Fee Claims, Priority Tax Claims, and, in the event of a Refinancing only, Priority Non-Tax Claims and General Unsecured Claims.

**1.29.    Disallowed Claim** means a Claim or portion thereof that (i) has been disallowed by a Final Order of the Court; (ii) is identified in the Schedules of Assets and Liabilities in an

amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules of Assets and Liabilities and as to which no proof of Claim has been filed or deemed filed by the Bar Date.

**1.30. Disclosure Statement** means the Disclosure Statement dated July 23, 2019 that relates to this Plan and which is approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

**1.31. Disclosure Statement Order** means the order of the Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**1.32. Disputed Claim** means any Claim or any portion thereof which has not become Allowed, which is not a Disallowed Claim, or against which an objection to the allowance thereof has heretofore been or is hereafter interposed and which has not been allowed by Final Order; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is or becomes the subject of an application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, shall be deemed to constitute a Disputed Claim.

**1.33. Distribution** means the distribution of the Distribution Fund in accordance with this Plan, or the Cash so distributed.

**1.34.**    **Distribution Address** means the address set forth in the relevant proof of claim. If no proof of claim is filed in respect to a particular Claim, such defined term means the address set forth in the Debtor's Schedules of Assets and Liabilities.

**1.35.**    **Distribution Date** means, initially, the later of (a) ten (10) days after the closing of the Sale or Refinancing, or (b) ten (10) days after all Disputed Claims become Allowed Claims, provided however that the Distribution Date may occur after the closing of the Sale or Refinancing but before such time as all Disputed Claims become Allowed Claims, as long as there is established a reserve consisting of the full amount of all Disputed Claims, from which such Disputed Claims shall be paid if and to the extent they become Allowed Claims. There shall be an additional Distribution Date ten (10) days after receipt of the Suzuki Proceeds.

**1.36.**    **Distribution Fund** means (a) the fund to be established from the proceeds of either a Refinancing or Sale (with respect to a Sale, net of the costs and expenses of Sale including without limitation the auctioneer's costs and expenses and broker commissions), plus (b) the Debtor Contribution and (c) the Suzuki Proceeds.

**1.37.**    **Effective Date** means the first Business Day after the date each of the conditions set forth in Section 11.1 hereof has been satisfied.

**1.38.**    **Estate** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.39.**    **Estate Causes of Action** means the actions commenced or to be commenced to recover monies for the Estate under Chapter 5 of the Bankruptcy Code, or any actions or proceedings commenced or to be commenced for the benefit of the Estate, including without limitation, proceedings described in Section III (F) of the Disclosure Statement.

6

**1.40.    Equity Interest** means an equity interest, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

**1.41.    Fee Claim** means a Claim for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case.

**1.42.    Fee Claims Bar Date** means a date which shall be thirty (30) days after the Confirmation Date, by which date all applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court.

**1.43.    Final Order** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which:  (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court, could be filed with respect to such order shall not cause such order not to be a Final Order.

**1.44.    General Unsecured Claim** means any Claim that is not an Administrative Claim, Fee Claim, Priority Non-Tax Claim, Priority Tax Claim, the Lender Secured Claim, Other Secured Claim or Equity Interest.

**1.45.    Lender** means 72nd Ninth LLC, a creditor holding a secured claim against the 753 Property and the 212 Property.

**1.46.    Lender Secured Claim** means the claim of the Lender filed in the amount of $17,139,183.54 on June 28, 2019, secured by the 753 Mortgage and 212 Mortgage.  The Debtor intends to object to the Lender Secured Claim to the extent that the Lender seeks to be paid default interest subsequent to the Petition Date and also reserves the right to object to the amount of the Lender's post-Petition Date fees and expenses.

**1.47.    Other Secured Claim** means a Secured Claim that is not the Lender Secured Claim or a Secured Real Estate Tax Claim.

**1.48.    Person** means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, interest holders, holders of Claims, current or former employees of the Debtor, or any other entity.

**1.49.    Petition Date** means April 18, 2019.

**1.50.    Plan** means this Chapter 11 Plan, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as may be filed hereafter in accordance with the terms of the Plan, the Bankruptcy Code and other applicable law.

**1.51.    Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim, Fee Claim, and Priority Tax Claim.

**1.52.    Priority Tax Claim** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.53.    Refinancing** means the refinance of the 753 Mortgage by the Debtor in order to satisfy the Lender Secured Claim, as discussed in Section IV(B) of the Disclosure Statement.

**1.54.** **Sale** means the sale of the 753 Property pursuant to the terms of this Plan, as discussed in Section IV(B) of the Disclosure Statement.

**1.55.** **Schedules** means the Schedules of Assets and Liabilities.

**1.56.** **Schedules of Assets and Liabilities** means Debtor's schedules of assets and liabilities filed with the Court pursuant to sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code, as the same may have been, or may hereafter be, amended.

**1.57.** **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor's interest in property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date. The defined term Secured Claim includes any Claim that is: (i) subject to an offset right and the holder of such Secured Claim under applicable law; and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.58.** **Secured Real Estate Tax Claim** means a Claim for real estate taxes due and owing in connection with the 753 Property that is secured by a lien against the 753 Property.

**1.59.** **Suzuki Proceeds** means any proceeds received by the Debtor as a result of the Debtor's counterclaims and third party action brought in the Suzuki Action (as defined in section II(A) of the Disclosure Statement.

**1.60.** **Unclaimed Property** means any Cash unclaimed after ninety (90) days following a Distribution Date as provided in Section 8.4 of this Plan. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as

undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts to locate such address which were reasonable under the circumstances as provided for in the Plan.

**1.61.   United States Trustee** means the Office of the United States Trustee for the Southern District of New York.

**ARTICLE II - SUMMARY OF PLAN**

The Plan is premised upon a Refinancing of the 753 Property.  The proceeds of the Refinancing, the Debtor Contribution, if needed, and the Suzuki Proceeds will form the Distribution Fund. Alternatively, in the event that the Debtor is unable to conclude a Refinancing within the time frame set forth in Section IV(B) of the Disclosure Statement, the Debtor shall effectuate the Sale of the Property pursuant to the Bidding Procedures annexed to the Disclosure Statement as Exhibit "A" thereto.  The costs and expenses incurred in connection with the Sale of the Property, including without limitation auctioneer's costs and expenses and broker commissions if any, will be paid from the proceeds of the Sale.  The remaining proceeds of the Sale, the Debtor Contribution if necessary, and the Suzuki Proceeds will form the Distribution Fund for payments to creditors under the Plan.

The Plan divides Claim holders into six (6) separate Classes, all of which may be impaired.  There are also three (3) unclassified categories of Claims – Administrative Claims, Fee Claims and Priority Tax Claims.

**ARTICLE III - TREATMENT OF ADMINISTRATIVE
CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS**

Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article IV.

**3.1.    Administrative Claims.**  Each holder of an Allowed Administrative Claim shall be paid 100% of the allowed amount of such Administrative Claim from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date, or receive such other less favorable treatment as may be agreed upon by such holder and the Debtor.  Notwithstanding the immediately preceding sentence, Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees.

**3.2.    Bar Date for Administrative Claims.  Proofs of claim or applications for payment of Administrative Claims (other than Fee Claims) arising subsequent to April 18, 2019 and before the Confirmation Date must be filed with the Court, with copies to the parties listed in Section 13.11, of this Plan on or before the Administrative Bar Date. Any Person that fails to file such a proof of claim or application with the Court within that time shall be forever barred from asserting such an Administrative Claim including without limitation, against the Debtor, the Estate, or their property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover any such Administrative Claim.**

**3.3.    Fee Claims.**  Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive 100% of the Allowed amount of such Claim, from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date, or receive such other less favorable treatment as may be agreed by such holder and the Debtor.

**3.4.    Bar Date for Fee Claims.  All applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court with copies to the parties listed in Section 13.11, on or before the Fee Claims Bar Date. Any Person or**

entity that fails to file such application on or before such date shall be forever barred from asserting such a Fee Claim against the Debtor, the Estate, or their property, and the holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Fee Claim.

**3.5.    Priority Tax Claims.**  Each holder of an Allowed Priority Tax Claim shall receive 100% of the Allowed amount of such Claim, from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or, at the Debtor's option, monthly for a period of five (5) years ending no later than the Petition Date, or shall receive such other less favorable treatment as may be agreed by such holder and the Debtor.

## ARTICLE IV - CLASSIFICATION OF CLAIMS

The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject this Plan.

**4.1.    Classes**

|  | Class | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | May Be Impaired | Yes |
| Class 2 | Lender Secured Claim | May Be Impaired | Yes |
| Class 3 | Secured Real Estate Tax Claims | May Be Impaired | Yes |
| Class 4 | Other Secured Claims | May Be Impaired | Yes |
| Class 5 | General Unsecured Claims | May Be Impaired | Yes |
| Class 6 | Equity Interests | May Be Impaired | Yes |

**4.2.    General Rules of Classification.**  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim has not been paid, released or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the

description of such other Class or Classes. For voting and distribution purposes, a holder of more than one Claim in a Class shall be deemed to have a single Claim in such Class.

## ARTICLE V - TREATMENT OF CLAIMS

**5.1. Priority Non-Tax Claims (Class 1).** Each holder of an Allowed Priority Non-Tax Claim shall be paid in full on or as soon as reasonably practicable after the initial Distribution Date from the Distribution Fund (a) in the event of a Refinancing, in full, and (b) in the event of a Sale, from funds remaining in the Distribution Fund after payment of Secured Real Estate Tax Claims, the Lender Secured Claim, Other Secured Claims, Allowed Administrative Claims, Fee Claims and Priority Tax Claims. The holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Debtor.

**5.2.    Lender Secured Claim (Class 2).** Class 2 under the Plan consists of the Lender Secured Claim. In the event of a Refinancing, the Lender Secured Claim shall be paid in full, or in such amount as is agreed to between the Debtor and the Lender, from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later. In the event of a Sale, the Lender shall be paid the net proceeds of Sale after payment of Sale costs and expenses and Secured Real Estate Tax Claims, in payment of the Lender Secured Claim, from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later. If not paid in full from the Sale, the Lender shall receive an additional Distribution on the additional Distribution Date. Any deficiency in payment of the Lender Secured Claim in the event of a Sale shall be deemed a General Unsecured Claim. Upon receipt of the Distribution to which the Lender is entitled, the Lender's lien against the 753 Property shall be deemed released and satisfied.

13

**5.3.    Secured Real Estate Tax Claims (Class 3)**.  Class 3 under the Plan consists of Secured Real Estate Tax Claims.  In the event of a Refinancing, Secured Real Estate Tax Claims shall be paid in full from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later.  In the event of a Sale, the holders of such claims shall be paid the net proceeds of Sale after payment of Sale costs and expenses from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later. If not paid in full from the Sale, such Claim holder shall receive an additional Distribution on the additional Distribution Date. Any deficiency in payment of a Secured Real Estate Tax Claim in the event of a Sale shall be deemed a General Unsecured Claim.  Upon receipt of the Distribution to which a holder of Claims in this Class is entitled, such Claimant's lien against the 753 Property shall be deemed released and satisfied.

**5.4.    Other Secured Claims (Class 4)**.  Claims within this Class consist of any Claimants holding Allowed Secured Claims other than the Lender and holders of Secured Real Estate Tax Claims.  In the event of a Refinancing, Other Secured Claims shall be paid in full from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later.  In the event of a Sale, holders of such Claims shall be paid the net proceeds of Sale after payment of Sale costs and expenses, Secured Tax Claims and the Lender Secured Claim from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later.  If not paid in full from the Sale, such Claim holder shall receive an additional Distribution on the additional Distribution Date.  Any deficiency in payment of an Other Secured Claim in the event of a Sale shall be deemed a General Unsecured

Claim. Upon receipt of the Distribution to which a holder of Claims in this Class is entitled, such Claimant's lien against the 753 Property shall be deemed released and satisfied.

**5.5.    General Unsecured Claims (Class 5)**.  Class 5 consists of any Claim that is not an Administrative Claim, Fee Claim, Priority Tax Claim, Lender Secured Claim, Priority Non-Tax Claim, Secured Tax Claim, Other Secured Claim or an Equity Interest, included within any other Class of Claims.

In the event of a Refinancing, each holder of an Allowed General Unsecured Claim shall be paid in full on or as soon as reasonably practicable after the initial Distribution Date from the Distribution Fund, or upon such other terms as may be agreed to between the Debtor and the holder of such Claims.  In the event of a Sale, each holder of a General Unsecured Claim shall be paid from the Distribution Fund their pro rata share of any funds remaining after payment of Allowed Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, the Lender Secured Claim, Secured Tax Claims and Other Secured Claims.

**5.6.    Equity Interests (Class 6)**.  Class 6 includes the holders of Equity Interests in the Debtor.  Such holders shall receive the remainder of the Distribution Fund after payment of all Allowed Claims.

## ARTICLE VI - ACCEPTANCE OR REJECTION OF PLAN

**6.1.    Voting of Claims.**  Each Claimant in Classes 1, 2, 3, 4, 5 and 6 shall be entitled to vote to accept or reject this Plan.

**6.2.    Acceptance by a Class.**  Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one-half in number of the holders, of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**6.3.    Presumed Acceptance of Plan.**  Pursuant to section 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a plan is conclusively presumed to accept a plan. Accordingly, No Class is unimpaired and conclusively presumed to accept the Plan.

**6.4.    Presumed Rejection of Plan.**  In accordance with section 1126(g) of the Bankruptcy Code, any Class that is to receive no distribution under a plan is conclusively presumed to reject a plan.  No Class is conclusively presumed to reject this Plan.

### ARTICLE VII - IMPLEMENTATION OF THE PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of the Plan.

**7.1.    Funding of the Plan.**

(a)    **Source of Distributions.**  The Distribution Fund will be derived from the proceeds of the Refinancing or Sale (in the case of a Sale, net of the costs and expenses of Sale including without limitation the auctioneer's costs and expenses and broker commissions).  To the extent necessary, the Debtor Contribution shall also be used to fund distributions under the Plan. The Suzuki Proceeds shall also be included in the Distribution Fund, as and when received.

(b)    **Maintenance of Distribution Fund**.  The Distribution Fund shall be held by the Debtor.  On the initial and additional Distribution Dates, the Debtor shall make the Distributions upon all Allowed Claims.

**7.2.    Exemption from Certain Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code: (i) the Sale of the Property hereunder; (ii) the issuance, transfer or exchange of any securities, instruments or documents; (iii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iv) the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, the Plan or the Sale of the Property hereunder, including any deeds, bills of sale

16

or assignments executed in connection with the Plan, shall not be subject to any stamp tax or similar tax, to the fullest extent provided for under section 1146(a) of the Bankruptcy Code.

**7.3    Estate Causes of Action**.  The Debtor shall have the option of commencing any Estate Causes of Action to recover the proceeds thereof for the Estate.  To the extent any such Causes of Action are commenced, the proceeds received in prosecution of such actions, net of any Allowed costs and expenses incurred in connection therewith, shall be distributed to holders of Allowed Claims, and thereafter to holders of Equity Interests.

**7.4.    Withdrawal of the Plan.**  The Debtor reserves the right to revoke and withdraw or to modify the Plan in accordance with Section 13.1 hereof at any time up to the Effective Date.

**7.5    Cramdown.**  The Debtor reserves the right to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class voting against the Plan.

## ARTICLE VIII - CLAIM OBJECTIONS AND DISTRIBUTIONS

**8.1.    Objections to and Estimation of Claims.**  From and after the Effective Date, the Debtor shall have the right to object to the allowance of any Claim, and may file with the Court any appropriate motion with respect thereto within 60 days of the Effective Date.  Such deadline may be extended by Order of the Bankruptcy Court.

**8.2.    Claims Filed After Bar Date.**  Any Claim filed after the Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.  Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the

Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of the Debtor.

**8.3.    Transmittal of Distributions and Notices.**

(a)    Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by that Person or his authorized agent. Absent any of the foregoing, the address set forth in the relevant Schedule of Assets and Liabilities for that Person may be used.  Property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.  Notwithstanding anything in this Plan to the contrary, the Debtors shall not have any obligation to attempt to locate any Person who is or becomes entitled to receive any Distribution under the Plan with regard to any undeliverable or uncashed Distributions.

(b)    A holder of a Claim may designate a different address for notices and Distributions by notifying the Debtor of that address in writing.  Any change of address of a party entitled to receive Distributions hereunder must be provided by registered mail in order to be effective.  Such notification shall be effective upon receipt.

(c)    If any Distribution to a holder of a Claim is returned as undeliverable (e.g., "forwarding time expired, "addressee unknown", etc.), no further Distributions to such holder shall be made unless and until the Debtor is timely notified within the time limits set forth in Section 8.4 of the Plan, in writing, of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest.

**8.4.    Unclaimed Property.**  If any Distribution remains unclaimed for a period of ninety (90) days after the relevant Distribution Date to the holder of an Allowed Claim entitled thereto, the Distribution shall constitute Unclaimed Property and the holder shall no longer be entitled to such Distribution.  All such property shall be retained by the Debtor for distribution pursuant to the terms of the Plan, subject, however, to the right to distribute Unclaimed Property to holders entitled thereto if such holders are subsequently located.

**8.5.    Withholding Taxes and Expenses of Distribution.**  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Debtor shall be authorized to withhold Distribution on such Claims until the requisite information is received.  If such information is not received within ninety (90) days after the Distribution Date, the provisions of the immediately preceding Section 8.4 shall apply.  In addition, all Distributions under the Plan shall be net of the actual and reasonable costs of making such Distributions and of any allocable fees or other charges relating thereto.

**8.6.    Disputed Payment.**  Notwithstanding anything to the contrary herein, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any time before an otherwise applicable Distribution is issued, the Debtor has taken action to recover on any causes of action or defenses against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense is resolved by Final Order or agreement of the Debtor.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor, in lieu of making such Distribution to such Person, may reserve for

such Distribution until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

8.7.    **Setoffs and Recoupment.**    Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, the Debtor may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Debtor, nor any provision of this Plan shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder.    To the extent the Debtor fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to such creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery against such creditor.    The Debtor may seek periodic Court approval for any such setoffs or recoupments.

8.8.    **Miscellaneous Distribution Provisions.**

(a)    **Method of Cash Distributions.**    Any Cash payment to be made by the Debtor pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Debtor, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(b)    **Distributions on Non-Business Days.**    Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(c)     **No Distribution in Excess of Allowed Amount of Claim.**
Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value in excess of the allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim shall be allowed nor Distribution made to the extent that it is for post-petition or post-Confirmation interest.

(d)     **Minimum Distributions.**  If a Distribution to be made to a given holder of an Allowed Claim would be $25.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such holder.   Any unclaimed Distributions shall be retained by the Debtor for distribution pursuant to the terms of the Plan.

(e)     **Disposition of Excess Funds.**  If, after ninety (90) days following the additional Distribution Date, any Unclaimed Property remains, or Cash of inconsequential value to the Estate remains in the possession or under the control of the Debtor, and the Debtor has satisfied and discharged all the expenses intended to be paid on behalf of the Estate, the Debtor shall either apply remaining Cash or Unclaimed Property for further Distribution ratably in accordance with the Plan or abandon such funds in a commercially reasonable manner, including to a charitable organization.

### ARTICLE IX - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1.    Assumption or Rejection of Executory Contracts and Other Unexpired Leases.**  On the Confirmation Date, (i) in the event of a Refinancing, any prepetition executory contracts and unexpired leases not previously assumed or rejected shall be deemed assumed under sections 365 and 1123 of the Bankruptcy Code, and (ii) in the event of a Sale, subject to the closing of the Sale, any prepetition executing contracts or unexpired leases not previously assumed or rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy Code, except (a) any executory contract or unexpired lease that is the subject of a separate

21

motion to assume, assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order; or (b) any executory contract or unexpired lease which shall have expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto shall not constitute an admission that any such contracts or leases are in fact executory contracts or unexpired leases or that the Debtor had any liability thereunder.

9.2.    The Confirmation Order shall constitute an order of the Court approving the rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date, but in the case of the Sale, subject to the closing. Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this Article IX if the Effective Date fails to occur for any reason.

**9.3.    Claims Relating to Rejected Pre-Petition Executory Contracts and Unexpired Leases.    Any Claim for damages arising by reason of the rejection of any pre-petition executory contract or unexpired lease hereunder must be filed on or before thirty (30) days following the Confirmation Date, and upon the failure of any entity to file such claim on or before such date, such entity shall be forever barred from asserting a claim on account of the rejection of such contract or unexpired lease, but shall nevertheless be bound by the provisions of the Plan.    Nothing in this Section 9.3 will extend any prior Bar Date set by prior order of the Bankruptcy Court.**

There shall be no restriction on the rights of the Debtor to object to any Claims relating to the rejection of executory contracts or unexpired leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

Any Allowed Claims arising from the rejection of an executory contract or unexpired lease will constitute a Class 5 General Unsecured Claim.

## ARTICLE X - EFFECT OF THE PLAN ON CLAIMS

**10.1.        Surrender of Securities and Cancellation of Existing Securities and/or Related Agreements.**

(a)        **Surrender of Securities.**   Each holder of any Claim against the Debtor shall, to the extent not already done and to the extent applicable, surrender to the Debtor any original note, instrument, certificate, certificated security or other item evidencing such Claim, and provide copies of any supporting agreement or other document.   No Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until such holder surrenders such items to the Debtor, or demonstrates the non-availability of such items to the satisfaction of the Debtor, including requiring such holder to post a lost instrument or other indemnity bond, among other things, to hold the Debtor harmless in respect of such instrument or other item described above and any Distributions made in respect thereof.   Any such holder that fails to surrender such items described above or satisfactorily explain their non-availability to the Debtor within ninety (90) days of the Distribution Date shall be deemed to have no further Claim against the Debtor, the Estate, the Debtor, or their property in respect of such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property.   Notwithstanding the immediately preceding sentence, any such holder of a Disputed Claim shall not be required to surrender such items until the time such Claim is allowed or disallowed.

**10.2.        Injunction, Release, Discharge and Exculpation.**

(a)        **Injunction.   All Persons who have held, hold or may hold Claims against the Debtor shall, with respect to any such Claims, be permanently enjoined from (i)**

23

taking any action against, or interfering in any respect with, the property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (ii) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (iii) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.

(b)     **Release of the Debtor.** All holders of Claims and Interests shall be permanently enjoined from and after the Confirmation Date from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against the Debtor based on any claim or cause of action against the Debtor which arose prior to the Confirmation Date.

(c)     **Discharge.** In the event of a Refinancing, the Debtor shall receive a discharge from any debt that arose prior to the Confirmation Date, whether or not a proof of Claim based on such debt is filed or deemed filed, such Claim is an Allowed Claim or the holder of such Claim has accepted the Plan. In the event of a Sale, the Debtor is not entitled to, and will not receive, a discharge since the Plan would be a liquidating plan and the Debtor would not be engaging in business after consummation of the Plan.

(d)     **Exculpation.** Any person that solicits acceptance or rejection of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Rules, is not liable, on account of such solicitation, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of the Plan.

**Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this section 10.2(d), or (ii) limit the liability of the Debtor's professionals to its respective client pursuant to DR 6-102 of the Code of Professional Responsibility.**

## ARTICLE XI - CONDITIONS TO CONFIRMATION AND CONSUMMATION

**11.1. Conditions to Effective Date/Consummation.** This Plan may not be consummated, and the Effective Date shall not occur, unless and until (a) the Confirmation Order shall have become a Final Order, and (b) the closing of the Refinancing or the Sale has occurred.

## ARTICLE XII - RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Court shall retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    To determine the allowability, classification, or priority of Claims upon objection by the Debtor and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

(b)    To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person;

(c)    To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to

resolve any dispute concerning liens, security interest or encumbrances on any property of the Estates;

(d)     To determine any and all applications for allowance of Fee Claims;

(e)     To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(f)     To determine any dispute relating the Sale, the Bidding Procedures, and confirmation of the Sale and/or any other matter that in any way relates to the foregoing;

(g)     To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

(h)     To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Part IX of the Plan;

(i)     To determine all Estate Causes of Action, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case, including any remands;

(j)     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purpose;

(k)     To issue orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

(l)    To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(m)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)    To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)    To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

(p)    To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

(q)    To approve any Distributions, or objections thereto, under the Plan;

(r)    To approve any Claims settlement entered into or offset exercised;

(s)    To enter a Final Order closing the Chapter 11 Case; and

(t)    To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

## ARTICLE XIII - ADMINISTRATIVE PROVISIONS

**13.1.    Amendments.**

(a)    **Pre-Confirmation Amendment.**  The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)    **Post-Confirmation Amendment Not Requiring Resolicitation.** After the entry of the Confirmation Order, the Plan may be modified to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Court approval for such modification is obtained, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims under the Plan.

(c)    **Post-Confirmation/Pre-consummation    Amendment    Requiring Resolicitation.** After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims, provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount of Allowed Claims in Classes entitled to vote upon the Plan; and (iv) the Debtor complies with the provisions of the Bankruptcy Code, including section 1125 of the Bankruptcy Code, with respect to the Plan as modified.

**13.2.    Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**13.3.    Governing Law.** Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

28

**13.4.    Courts of Competent Jurisdiction.**  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.5.    Effectuating Documents and Further Transactions.**  The Debtor and its counsel shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan.

**13.6.    Cramdown.**  The Debtor reserves the right to request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

**13.7.    Confirmation Order and Plan Control.**  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan.

**13.8.    Severability.**  In the event that the Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force

and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.9.    Fractional Distribution.**    Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar.

**13.10.        Rules of Construction.**

(a)        **Undefined Terms.**    Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

(b)        **Miscellaneous Rules.**    (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise; (ii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (iii) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date; (iv) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (v) whenever the Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after" such date.

**13.11. Notices.**    All notices or requests in connection with the Plan shall be in writing and deemed to have been given five (5) Business Days after first-class mailing, one Business

Day after sending by overnight courier, or on the first Business Day after facsimile or electronic

transmission, addressed to:

> 753 Ninth Ave Realty LLC
> Attn: Marina Koustis
> 1461 First Avenue
> Suite 213
> New York, New York 10075
>
> with a copy to:
>
> Cullen and Dykman LLP
> 100 Quentin Roosevelt Boulevard
> Garden City, NY11530
> (516) 357-3700
> Matthew G. Roseman, Esq.
> Bonnie L. Pollack, Esq.

**13.12. Post-Confirmation Date Service List - Persons Entitled to Notice.** From and

after the Confirmation Date, any notices of appearance and demands for service of process filed

by any Person with the Court prior to such date shall no longer be effective. No further notices,

other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons

unless such Persons file a new notice of appearance and demand for service of process dated

subsequent to the Confirmation Date, which subsequent notice and demand must be filed with

the Court and served upon the Persons listed in Section 13.11 of the Plan.

**13.13. Notice of Entry of Confirmation Order.** Notice of Entry of the Confirmation

Order shall be sufficient if a copy of a notice indicating that said order has been entered by the

Court, without attaching said order, is mailed to those Persons who had filed a notice of

appearance and request for service of process in the Chapter 11 Case and to Persons appearing

on the Post-Confirmation Date Service List.

**13.14. Extension of Dates; Consent.** To the extent any provision or definition of the

Plan provides for an act or event to take place on a certain date, such date may be extended upon

the written consent of the Debtor.  Any provision of the Plan which is conditioned upon, or subject to the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

**13.15. No Admissions.**    Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

DATED:        July 23, 2019

                                    753 NINTH AVE REALTY LLC


                                    By:    /s/ Marina Koustis
                                           Name: Marina Koustis
                                           Title: Managing Member of Sole Member



                                    CULLEN AND DYKMAN LLP
                                    Attorneys for the Debtor


                                    By:/s/ Bonnie Pollack
                                           Matthew G. Roseman, Esq.
                                           Bonnie L. Pollack, Esq.
                                           100 Quentin Roosevelt Boulevard
                                           Garden City, New York 11530
                                           (516) 357-3700