CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for 753 Ninth Ave Realty LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
753 NINTH AVE REALTY LLC,                                   :    Case No. 19-11201 (MKV)
                                                            :
                                                            :
                          Debtor.                           :
                                                            :
                                                            :
------------------------------------------------------------x

## DISCLOSURE STATEMENT FOR
## DEBTOR'S CHAPTER 11 PLAN

### IMPORTANT DATES

- Date by which Ballots must be received: _____, 2019 at 5:00 p.m. Eastern Time.

- Date by which objections to Confirmation of the Plan must be filed and served: _____, 2019 at 5:00 p.m. Eastern Time.

- Hearing on Confirmation of the Plan: _____, 2019 at 10:00 a.m. Eastern Time.

**This is not a solicitation of acceptance or rejection of the plan. Acceptances or rejections may not be solicited until a disclosure statement has been approved by the Court. This disclosure statement is being submitted for approval but has not been approved by the Court.**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................2
    A.     General.....................................................................................................2
    B.     Voting .....................................................................................................2
    C.     Confirmation Hearing.............................................................................4
    D.     Recommendations...................................................................................5

II. HISTORICAL INFORMATION .........................................................................5
    A.     The Debtor's Business and Pre-Petition Activity ..................................5

III. THE REORGANIZATION CASE ......................................................................7
    A.     Overview.................................................................................................7
    B.     Employment of the Debtor's Professionals ...........................................8
    C.     Secured Claims/Adequate Protection .....................................................8
    D.     Claims Administration ............................................................................8
    E.     Estate Causes of Action ........................................................................10
    F.     Exclusivity ............................................................................................10

IV. SUMMARY OF THE PLAN ............................................................................10
    A.     General..................................................................................................10
    B.     Plan Overview/Property Sale................................................................11
    C.     Treatment of Claims .............................................................................12
    D.     Treatment of Executory Contracts and Unexpired Leases ...................17
    E.     Distributions and Claims Resolution Provisions ..................................19

V. MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION .........21
    A.     Funding of the Plan...............................................................................21
    B.     Injunction .............................................................................................22
    C.     Release of the Debtor…………………………………………………..23
    D.     Discharge...............................................................................................23

E.     Exculpation ........................................................................................23

F.     Post-Confirmation Jurisdiction of the Court...........................................24

VI. CONFIRMATION OF THE PLAN ......................................................................26

A.     Introduction................................................................................26

B.     Conditions to Confirmation and Effective Date ..................................27

C.     Voting Procedures and Standards .....................................................27

D.     Acceptance...................................................................................30

E.     Confirmation and Consummation ......................................................31

VII. CERTAIN RISK FACTORS TO BE CONSIDERED............................................36

A.     Risk That Distributions Will Be Less Than Estimated........................36

B.     Bankruptcy Risks…………………………………………………………36

VIII. TAX CONSEQUENCES..................................................................................37

IX. CONCLUSION ................................................................................................38

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN. IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN.  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO CAREFULLY READ THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT THE PLAN.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## I. INTRODUCTION

### A.    General

753 Ninth Ave Realty LLC (the "Debtor") files this Disclosure Statement (the "Disclosure Statement") with respect to its Chapter 11 Plan dated July 23, 2019 (the "Plan").

This Disclosure Statement is provided pursuant to section 1125 of the Bankruptcy Code to all the known creditors of the Debtor.  The purpose of this Disclosure Statement is to provide sufficient information to enable creditors who are entitled to vote to make an informed decision on whether to accept or reject the Plan.  Most words or phrases used in this Disclosure Statement shall have their usual and customary meanings.  Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan.   FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.

**THE DEBTOR IS THE PROPONENT OF THE PLAN AND SUPPORTS CONFIRMATION OF THE PLAN.  IT URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.**

### B.    Voting

With respect to Claims in Classes that are "impaired" (as defined below) under, but not deemed to have rejected. the Plan. each holder of a Claim in such Classes will receive a copy of this Disclosure Statement. a Ballot for the acceptance or rejection of the Plan, and other related voting materials.  Any creditor whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired."

Under the Plan, holders of Allowed Claims in Classes, 1, 2, 3, 4, 5 and 6 may be impaired, and are therefore entitled to vote on the Plan (the "Voting Classes"). For a description of the Classes of Claims and their treatment under the Plan, see Section IV(C) below.

The date of entry of the Disclosure Statement Order is fixed as the "Voting Record Date." Only Persons who hold Claims on the Voting Record Date are entitled to receive a copy of this Disclosure Statement and all of the related materials. Only Persons who hold Claims on that date that are impaired under the Plan and are not deemed to reject the Plan are entitled to vote on the Plan.

In voting on the Plan, please use only the Ballot sent to you with this Disclosure Statement. Please complete and sign your Ballot and return it in the enclosed pre-addressed envelope to the Balloting Agent:

> Cullen and Dykman LLP
> Attn: Bonnie L. Pollack, Esq.
> 100 Quentin Roosevelt Boulevard
> Garden City, NY 11530

ALL PROPERLY COMPLETED BALLOTS RECEIVED BY THE BALLOTING AGENT PRIOR TO _____, 2019 AT 5:00 P.M. EASTERN TIME (THE "VOTING DEADLINE") WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER EACH CLASS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN HAS ACCEPTED THE PLAN. ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT. ANY BALLOTS RECEIVED BY FACSIMILE WILL NOT BE ACCEPTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT. The Balloting Agent will prepare and file with the Court a certification of the results of the balloting with respect to the Plan.

3

Your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired under a plan vote to accept such plan, unless the "cramdown" provisions of the Bankruptcy Code are employed. The Plan Sponsor reserves its right to seek to "cramdown" the Plan on non-accepting Classes of creditors. See Section VI below.

**C.    Confirmation Hearing**

The Court will hold the Confirmation Hearing commencing at 10:00 a.m.(Eastern Time), on _____, 2019 at the United States Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, New York 10004, before the Honorable Mary Kay Vyskocil, United States Bankruptcy Judge. The Confirmation Hearing may be adjourned from time to time without further notice. At the Confirmation Hearing, the Court will (i) determine whether the requisite vote has been obtained from the Voting Classes, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, (iv) determine whether to confirm the Plan, and (v) grant such other and further relief as the Court deems reasonable and appropriate.

Any objection to confirmation of the Plan must be in writing and filed with the Court and served in a manner so as to be received on or before _____, 2019 at 5:00 p.m. Eastern Time by: (1) counsel to the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, Attn: Bonnie L. Pollack, Esq.; and (2) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014.

D.     **Recommendations**

**THE DEBTOR SPONSOR RECOMMENDS THAT ALL HOLDERS OF CLAIMS IN THE VOTING CLASSES VOTE TO ACCEPT THE PLAN.**

**II. HISTORICAL INFORMATION**

A.     **The Debtor's Business and Pre-Petition Activity**

The Debtor has owned and operated a mixed use property at 753 Ninth Ave, New York, New York since 1995 (the "753 Property"). Prior to early 2014, the 753 Property, together with a related property located at 212 East 72nd Street, New York, New York (the "212 Property"; together with the 753 Property, the "Properties"), owned by 212 East 72nd Street, LLC ("212 East"), were secured by mortgages in favor of RCG Debt IV REIT, L.P. (the "Previous Lender"). Since such mortgages were becoming due and payable, in or about November 2013, the Debtor retained Suzuki Capital LLC ("Suzuki Capital") and, in particular, Sam Suzuki ("Suzuki") to act as its mortgage broker to procure a loan to pay off the Previous Lender. Ultimately, Suzuki Capital and Suzuki elected to place two (2) loans with Doral Bank in the aggregate amount of $8,100,000.00 (the "Loans"), consisting of a loan to the Debtor in the amount of $4.6 million, and a loan to 212 East in the amount of $3.5 million. At the time the Loans were made, the Debtor and the Lender also entered into the Cross Default Agreement whereby, among other things, the 753 Property secured the 212 Note and the 212 Property secured the 753 Note.

The Loans were scheduled to close during the morning of February 22, 2014. In the late hours of February 26, 2014, the Debtor received, for the first time, a copy of Doral Bank's commitment letter, which included, for the first time, a requirement that both of the Properties be managed by Royal Host Realty, LLC ("Royal Host"), an entity wholly owned by Suzuki or Suzuki Capital. At all times prior to the Loans, the Properties were self-managed. At no point in time

prior to receiving the commitment letter were the Debtor or 212 East ever made aware that Doral Bank would require Royal Host to be the manager of the Properties.

Upon information and belief, it was the plan of Doral Bank, Suzuki Capital, Suzuki and Royal Host that Royal Host obtain total and complete control over the Properties. However, the commitment letter did not detail the extent of the control that Royal Host would have as manager over the Properties. In fact, the Debtor did not see the alleged management agreement until the closing of the Loans. At the closing, the Debtor and 212 East were advised by Suzuki on behalf of Suzuki Capital and Royal Host, as well as representatives of Doral Bank, that the management agreement was a "standard agreement". As the Debtor and 212 East were in a precarious position with the Previous Lender and needed to close on the Loans to avoid foreclosure, the statements and representations of Suzuki, Suzuki Capital, Royal Host and Doral Bank that it was a "standard agreement" were relied upon in entering into the management agreement at closing.

Upon information and belief, Doral Bank, Suzuki and Suzuki Capital underwrote the Loans in such a manner as to provide for the 212 Property to be rented out, despite that they all knew that this was the primary residence of relatives of the Debtor's principals. The Debtor and 212 East were never told that the Loans were underwritten in such manner and, instead, were advised that the rental income from the 753 Property would cover the debt service of the Loans. As the Debtor and 212 East had always managed the Properties, they agreed to the Loans with the understanding that the income from the 753 Property would cover the debt service. Despite the foregoing, Doral Bank, Suzuki, Suzuki Capital and Royal Host all knew that the Loans came with the caveat that Royal Host would be the manager of the Properties and, as such, would incur a management fee making it impossible for the 753 Property to carry the debt service of the Loans.

Immediate subsequent to the closing, Royal Host began running the Properties in such a manner that prevented the obligations under the Loans to be met, including but not limited to, paying itself a management fee before paying any of the obligations to manage the Properties, failing to make the monthly mortgage payments to Doral Bank despite receiving rental payments to cover the debt service, failing to pay the insurance for the Properties despite receiving rental payments to cover the cost of insurance and failing to actively market vacant units at the 753 Property.

Ultimately, the Debtor and 212 East were able to successfully remove Royal Host as manager of the Properties in or around August 2014; however, the damage had already been done-- as a result of the actions of Royal Host, the Debtor and 212 East were behind on their debt obligations to Doral Bank. This ultimately led to an action by the Lender, successor-in-interest to Doral Bank, to foreclose its mortgages against the Properties (the "Foreclosure Action"), as well as an action by Royal Host for alleged unpaid management fees and counterclaims and a third-party action by the Debtor and 212 East against Royal Host, Suzuki Capital, Suzuki and Doral Bank for their damages respect to the foregoing (the "Suzuki Action"). Judgment in favor of the Debtor with respect to the damages in the Suzuki Action is imminent. The prospect of collection of such damages and the timing of same is uncertain. As to the Foreclosure Action, a hearing was scheduled in the foreclosure action on April 25, 2019 to appoint a receiver. As a result, the Debtor's bankruptcy filing was necessitated on the Petition Date.

## III. THE REORGANIZATION CASE

### A.    Overview

As of the Petition Date, all actions and proceedings against the Debtor and acts to obtain property from the Debtor were stayed under section 362 of the Bankruptcy Code. During the

administration of the Chapter 11 Case, the Debtor managed its business and affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to the control and supervision of the Court.

**B.     Employment of the Debtor's Professionals**

The Debtor retained the law firm of Cullen and Dykman LLP as its counsel in connection with the Chapter 11 Case. The Debtor has also sought to retain special counsel to continue with the Suzuki Action, which remains pending before the Court. The Debtor has not yet employed accountants.

**C.     Secured Claims/Adequate Protection**

As set forth above, the Lender holds mortgages against both the 753 Property and the 212 Property. Only the 753 Property is property of the bankruptcy estate subject to the jurisdiction of the Bankruptcy Court. On the Petition Date, the Debtor filed a motion for use of the Lender's cash collateral, constituting the rents generated by the 753 Property. On April 24, 2019 an interim order granting the use of cash collateral was entered by the Court. Thereafter, the Debtor and the Lender negotiated the terms of a consensual final cash collateral order, which was entered by the court on June 27, 2019. Pursuant to the final cash collateral order, the Lender was granted adequate protection in the form of monthly interest payments upon the 753 Note, replacement liens and super priority claims (subject to certain carve-outs).

In addition to the Lender, there are also Secured Real Estate Tax Claims against the 753 Property as well as certain minimal Other Secured Claims as described below.

**D.     Claims Administration**

**1.     Filing of Schedules and Statements**

On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities.

2.    **Bar Date for Pre-Petition Claims**

By order dated May 21, 2019, the Court established July 1, 2019 as the last day by which proofs of claims arising prior to the Petition Date must have been filed with the Court, and October 15, 2019 for the last day by which governmental entities must file claims.

3.    **Bar Date for Post-Petition Claims**

*Administrative Claims*

**Under the Plan, all holders of Administrative Claims arising subsequent to April 19, 2019 and before the Confirmation Date (not including Fee Claims (described below)), and not paid prior to the Confirmation Date, must file with the Court proper requests for payment of such Administrative Claims, and serve copies upon the parties listed in Section 13.11 of the Plan, on or before the Administrative Bar Date.  Parties not complying with this deadline shall be forever barred from seeking payment of those Claims including, without limitation, against the Debtor, the Estate, or their property, or commencing or continuing any action, employment of process or act to collect, offset or recover any such Administrative Claim.**  The notice of Confirmation of the Plan to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will include notice of the Administrative Bar Date.

*Fee Claims*

**All parties requesting compensation or reimbursement of Fee Claims pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered or expenses incurred on behalf of the Debtor or prior to the Confirmation Date must file applications with the Court, with copies to the parties listed in Section 13.11 of the Plan, on or before the Fee Claims Bar Date or shall be forever barred from seeking payment of those Fee Claims.**  The notice of Confirmation of the Plan to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will include notice of the Fee Claims Bar Date.

E.    **Estate Causes of Action**

The Debtor shall have the option of commencing any Estate Causes of Action to recover the proceeds thereof for the Estate.  Although not an Estate Cause of Action, the Debtor is continuing its litigation against Suzuki and Suzuki Capital.

F.    **Exclusivity**

The Debtor's exclusive period during which only it could file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code expires on August 16, 2019, and its exclusive period to obtain acceptances of the plan expires on October 15, 2019.  The Debtor has filed the Plan within its exclusive period.  Pursuant to the consensual cash collateral order entered into with the Lender, the Debtor has until August 31, 2019 to obtain the approval of this Disclosure Statement and October 10, 2019 to obtain confirmation of the Plan.

## IV.  SUMMARY OF THE PLAN

A.    **General**

SET FORTH IN THIS SECTION IS A SUMMARY OF CERTAIN OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH CONFIRMATION OF THE PLAN.  THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND CAREFUL READING OF THE PLAN.  STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS OR DISTRIBUTIONS (OR THE VALUE OF SUCH DISTRIBUTIONS) ARE ESTIMATES BY THE DEBTOR BASED ON AVAILABLE INFORMATION AND ARE NOT A REPRESENTATION AS TO THE ACCURACY OF THESE AMOUNTS.

**B.    Plan Overview/Property Sale**

Under the Plan, the Debtor proposes to refinance its obligations to the Lender under the 753 Note.  It is the Debtor's intention to obtain a commitment for such Refinancing by no later than the Confirmation Hearing.  The commitment for the Refinancing shall provide for a closing within forty-five (45) days of entry of the Confirmation Order.

If the Debtor fails to obtain such a commitment for the Refinancing on or before the date of the Confirmation Hearing, a Sale of the Property shall proceed in accordance with the Bidding Procedures annexed hereto as Exhibit "A".  Under these circumstances, a Sale shall occur within forty-five (45) days of the date of entry of the Confirmation Order.

If the Debtor timely obtains a commitment for the Refinancing but fails to close the Refinancing within forty-five (45) days of entry of the Confirmation Order, the Debtor shall proceed with a Sale of the Property in accordance with the Bidding Procedures, which Sale shall occur within seventy-five (75) days of entry of the Confirmation Order.

In the event that the Debtor proceeds with a Sale of the Property, the costs and expenses incurred in connection with such Sale, including without limitation auctioneer's costs and expenses and broker's commission, if any, will be paid from the proceeds of the Sale.

In the event of a Refinancing, it is intended that the Lender Secured Claim, Secured Real Estate Tax Claims and Other Secured Claims would all be paid in full.  Additionally, amounts necessary to make payments on Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims and General Unsecured Claims would be paid from the proceeds of the Refinancing or, if necessary, the Debtor Contribution.

In the event of a Sale, the Debtor has obtained an appraisal of the 753 Property, a copy of which is annexed hereto as Exhibit "B", which values the 753 Property at $13,500,000.  The net

proceeds of sale, estimated to amount to approximately $11,800,000, would be used to pay the Lender Secured Claim to the extent attributable to the 753 Note and Secured Real Estate Tax Claims. Thereafter, any proceeds remaining would be paid to the Lender on account of the 212 Note, and holders of Administrative Claims, Fee Claims and Priority Tax Claims would be paid through the Suzuki Proceeds and Debtor Contribution.

## C.    Treatment of Claims

The Plan separates Claims into three (3) unclassified categories and six (6) Classes. A Claim is placed in a particular unclassified category or Class only to the extent that the Claim falls within the description of that category or Class. A Claim is also placed in a particular category or Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that category or Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and, subject to compliance with the Administrative Bar Date and Fee Claims Bar Date set forth in Article III of the Plan, will be paid in full in Cash to the extent such Claims are Allowed. All other Claims have been classified. Each holder of a Claim should refer to Articles III, IV and V of the Plan for a full description of the classification and treatment of Claims provided under the Plan.

### 1.    Administrative Claims – Not Classified

An Administrative Claim is an unsecured Claim, other than a Fee Claim, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) all

fees and charges assessed against the Estate pursuant to section 1930 of title 28 of the United States Code ("United States Trustee Fees"). The Debtor believes that Administrative Claims will total no more than the amounts due and owing for the United States Trustee Fees.

Each holder of an Allowed Administrative Claim shall be paid 100% of the Allowed amount of such Administrative Claim from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date, or receive such other less favorable treatment as may be agreed upon by such holder and the Debtor. Notwithstanding the immediately preceding sentence, Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees.

Estimated Percentage Recovery: 100% (see Section V(A) below).

**2.     Fee Claims – Not Classified**

Fee Claims are defined under the Plan as Claims for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case, which are subject to the approval by the Court after appropriate fee application.

Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive 100% of the Allowed amount of such Claim, from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date, or receive such other less favorable treatment as may be agreed by such holder and the Debtor.

Cullen and Dykman LLP is the only Claimant within this class at this time. It is anticipated that fees to Debtor's counsel will amount to approximately $100,000.

Estimated Percentage Recovery: 100% (see Section V(A) below).

3.    **Priority Tax Claims – Not Classified**

A Priority Tax Claim is defined as a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code. Each holder of an Allowed Priority Tax Claim shall be paid 100% of the Allowed amount of such Claim from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or, at the Debtor's option, monthly over a period ending five (5) years from the Petition Date, or receive such other less favorable treatment as may be agreed upon by the Claimant and the Debtor.

Although the Bar Date for governmental entities is not until October 15, 2019, it is anticipated that Priority Tax Claims will be *de minimus*.

Estimated Percentage Recovery:  100% (See Section V(A) below).

4.    **Priority Non-Tax Claims – Class 1**

Each holder of an Allowed Priority Non-Tax Claim shall be paid in full on or as soon as reasonably practicable after the initial Distribution Date from the Distribution Fund (a) in the event of a Refinancing, in full, and (b) in the event of a Sale, from funds remaining in the Distribution Fund after payment of Secured Real Estate Tax Claims, the Lender Secured Claim, Other Secured Claims, Administrative Claims, Fee Claims and Priority Tax Claims. The holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Debtor.

There are no Priority Non-Tax Claims against the Debtor.

Estimated Percentage Recovery:  N/A

5.    **Lender Secured Claim – Class 2**

Class 2 under the Plan consists of the Lender Secured Claim. In the event of a Refinancing, the Lender Secured Claim shall be paid in full, or in such amount as is agreed to

14

between the Debtor and the Lender, from the Distribution Fund on or as soon as reasonably practicable after the initial  Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later.  In the event of a Sale, the Lender shall be paid the net proceeds of Sale after payment of Sale costs and expenses and Secured Real Estate Tax Claims, in payment of the Lender Secured Claim, from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later. If not paid in full from the Sale, the Lender shall receive an additional Distribution on the additional Distribution Date. Any deficiency in payment of the Lender Secured Claim in the event of a Sale shall be deemed a General Unsecured Claim.  Upon receipt of the Distribution to which the Lender is entitled, the Lender's lien against the 753 Property shall be deemed released and satisfied.

Estimated Percentage Recovery (upon the 753 Note):  100% (see Section V(A) below).

**6.    Secured Real Estate Tax Claims – Class 3**

Class 3 under the Plan consists of the Secured Real Estate Tax Claims in the scheduled amount of approximately $640,000.   In the event of a Refinancing, Secured Real Estate Tax Claims shall be paid in full from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later.  In the event of a Sale, the holders of such Claims shall be paid the net proceeds of Sale after payment of Sale costs and expenses from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later. If not paid in full from the Sale, the holder of such Claim shall receive an additional Distribution on the additional Distribution Date. Any deficiency in payment of a Secured Real Estate Tax Claim in the event of a Sale shall be deemed a General Unsecured

15

Claim.  Upon receipt of the Distribution to which a holder of Claims in this Class is entitled, such Claimants' lien against the 753 Property shall be deemed released and satisfied.

Estimated Percentage Recovery: 100% (see Section V(A) below).

7.      **Other Secured Claims – Class 4**

Claims within this Class consist of any Claimants holding Allowed Secured Claims other than the Lender and holders of Secured Real Estate Tax Claims, consisting at this time of Admiral Energy Corp. and the NYC Office of Administrative Trials and Hearings, with total Claims of $9,332.03.  In the event of a Refinancing, Other Secured Claims shall be paid in full from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claims becoming Allowed Claims, whichever is later.  In the event of a Sale, holders of such Claims shall be paid the net proceeds of Sale after payment of Sale costs and expenses, Secured Real Estate Tax Claims and the Lender Secured Claim from the Distribution Fund on or as soon as reasonably practicable after the initial Distribution Date or upon such Claim becoming an Allowed Claim, whichever is later.  If not paid in full from the Sale, the holder of such Claim shall receive an additional Distribution on the additional Distribution Date.  Any deficiency in payment of an Other Secured Claim in the event of a Sale shall be deemed a General Unsecured Claim.  Upon receipt of the Distribution to which a holder of Claims in this Class is entitled, such Claimant's lien against the 753 Property shall be deemed released and satisfied.

Estimated Percentage Recovery: 0%/100% (see Section V(A) below).

8.      **General Unsecured Claims – Class 5**

Class 5 consists of any Claim that is not an Administrative Claim, Fee Claim, Priority Tax Claim, Lender Secured Claim, Priority Non-Tax Claim, Secured Real Estate Tax Claim,

Other Secured Claim, or included within any other Class of Claims. Claims within this Class amount to approximately $110,000.

In the event of a Refinancing, each holder of an Allowed General Unsecured Claim shall be paid in full on or as soon as reasonably practicable after the initial Distribution Date from the Distribution Fund, or upon such other terms as may be agreed to between the Debtor and the holder of such Claims. In the event of a Sale, each holder of a General Unsecured Claim shall be paid from the Distribution Fund their pro rata share of any funds remaining after payment of Allowed Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, the Lender Secured Claim, Secured Tax Claims and Other Secured Claims.

Estimated Percentage Recovery: 0%/100% (see Section V(A) below).

9.      **Equity Interest – Class 6**

Class 6 includes the holders of Equity Interests in the Debtor. In the event of a Refinancing, holders of Equity Interests will retain their equity in the Debtor. In the event of a Sale, such holders shall receive the remainder of the Distribution Fund after payment of all Allowed Claims.

Estimated Percentage Recovery: 0%

D.      **Treatment of Executory Contracts and Unexpired Leases**

1.      **Assumption or Rejection of Executory Contracts and Other Unexpired Leases**

On the Confirmation Date, (i) in the event of a Refinancing, any prepetition executory contracts and unexpired leases not previously assumed or rejected shall be deemed assumed under sections 365 and 1123 of the Bankruptcy Code, and (ii) in the event of a Sale. subject to the closing of the Sale, any prepetition executing contracts or unexpired leases not previously assumed or rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy

Code, except (a) any executory contract or unexpired lease that is the subject of a separate motion to assume, assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order; or (b) any executory contract or unexpired lease which shall have expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto shall not constitute an admission that any such contracts or leases are in fact executory contracts or unexpired leases or that the Debtor had any liability thereunder.

The Confirmation Order shall constitute an order of the Court approving the rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date, but in the case of the Sale, subject to the closing. Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this Article IX if the Effective Date fails to occur for any reason.

### 2.    Bar Date for Rejection Damages

**If the rejection of an executory contract or unexpired lease pursuant to Article IX of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Debtor's Estate, or their property unless the party files an original proof of Claim (with supporting documentation) with the Bankruptcy Court <u>within thirty (30) days after entry of the Confirmation Order.</u>**

There shall be no restriction on the rights of the Debtor and/or the Plan Sponsor to object to any Claims relating to the rejection of executory contracts or unexpired leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

Any Allowed Claim arising from the rejection of an executory contract or unexpired lease shall constitute a Class 5 General Unsecured Claim.

**E.      Distributions and Claims Resolution Provisions**

**1.      Objections to Claims**

From and after the Effective Date, the Debtor shall have the right to object to the allowance of any Claim, and may file with the Court any appropriate motion with respect thereto within 60 days of the Effective Date.   Such deadline may be extended by Order of the Bankruptcy Court.

**2.      Claims Filed After Bar Date.**

Any Claim filed after any applicable Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.   Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.   A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of the Debtor.

**3.      Withholding Taxes and Expenses of Distribution**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.   All Persons holding Claims shall be required to provide any information necessary to affect the withholding of such taxes, and the Debtor shall be authorized to withhold Distribution on such Claims until the requisite information is received.

**4.      Disputed Payment**

Notwithstanding anything to the contrary in the Plan, no Distribution shall be made to the

holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any

time before an otherwise applicable Distribution is issued, the Debtor has taken action to recover

on any causes of action or defenses against or with regard to the holder of such Claim (or the

direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense

is resolved by Final Order or agreement of the Debtor.

Additionally, if any dispute arises as to the identity of a holder of an Allowed Claim who

is entitled to receive any Distribution, the Debtor may, in lieu of making such Distribution to

such Person, reserve for such Distribution until the disposition thereof shall be determined by

Court order or by written agreement among the interested parties to such dispute.

**5.      Setoffs and Recoupment**

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements

previously approved by Final Order of the Court, the Debtor may, pursuant to applicable law, set

off or recoup against any Claim (for purposes of determining the Allowed amount of such Claim

on which distribution shall be made and before any Distribution is made on account of such

Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the

Estate may hold against the holder of such Claim.

Neither the failure to effect such a setoff or recoupment, the allowance of any Claim

hereunder, any other action or omission of the Debtor, nor any provision of the Plan shall

constitute a waiver or release by the Plan Sponsor of any such claims, rights and causes of action

that the Debtor may possess against such holder.  To the extent the Debtor fails to setoff or

recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to

such creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery against such creditor. The Debtor may seek periodic Court approval for any such setoff or recoupment.

### 6.   Interest on Claims.

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post-petition and post-confirmation interest shall <u>not</u> accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## V.  MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION

### A.   Funding of the Plan

The following table sets forth a summary of the sources of estimated proceeds that will be available for distribution to creditors in the event of a Sale and the application thereof:

<u>Sources of Estimated Proceeds</u>

| | | |
|---|---|---|
| Sale (Net Proceeds) | $11,800,000 | |

<u>Application of Estimated Proceeds</u>

| | | |
|---|---|---|
| Estimated U.S. Trustee Fees | $125,000 | (100%) |
| Estimated Fee Claims | $100,000 | (100%) |
| Priority Tax Claims | $10,000 | (100%) |
| Priority Non-Tax Claims | $0.00 | (N/A) |
| Secured Real Estate Tax Claims | $640,000 | (100%) |
| Lender Secured Claims (753 Note only) | $9,796,595 | (100%) |

| | | |
|---|---|---|
| Other Secured Claims[1] | $9,332 | (0%) |
| General Unsecured Claims | $110,000 | (0%) |

THE AMOUNTS CONTAINED IN THE FOREGOING TABLE REPRESENT ESTIMATES BASED ON CURRENT INFORMATION ONLY. ALTHOUGH THE DEBTOR BELIEVES THAT THE ESTIMATED PERCENTAGE RECOVERIES ARE REASONABLE, NO REPRESENTATION CAN BE OR IS BEING MADE WITH RESPECT TO WHETHER THE ESTIMATED PERCENTAGE RECOVERIES SHOWN WILL BE REALIZED BY THE HOLDER OF AN ALLOWED CLAIM IN A PARTICULAR CLASS. THE ACTUAL RECOVERIES UNDER THE PLAN WILL DEPEND UPON A VARIETY OF FACTORS INCLUDING, BUT NOT LIMITED TO, THE AMOUNT RECEIVED FROM THE SALE.

**B.    Injunction**

**The Confirmation Order will provide, among other things, that all Persons who have held, hold or may hold Claims against the Debtor are, with respect to any such Claims, permanently enjoined from and after the Confirmation Date from (a) taking any action against, or interfering in any respect with, the property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan);  (b) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (c) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.**

---

[1] The balance of the purchase price would be paid to the Lender on account of the 212 Note, and neither these Claims nor General Unsecured Claims will receive a payment in the event of a Sale.

C.    **Release of the Debtor**

All holders of Claims shall be permanently enjoined from and after the Confirmation Date from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against the Debtor based on any claim or cause of action against them which arose prior to the Confirmation Date.

D.    **Discharge**

In the event of a Refinancing, the Debtor shall receive a discharge from any debt that arose prior to the Confirmation Date, whether or not a proof of Claim based on such debt is filed or deemed filed, such Claim is an Allowed Claim or the holder of such Claim has accepted the Plan.  In the event of a Sale, the Debtor is not entitled to, and will not receive, a discharge since the Plan would be a liquidating plan and the Debtor would not be engaging in business after consummation of the Plan.

E.    **Exculpation**

Any person that solicits acceptance or rejection of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Rules, is not liable, on account of such solicitation, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of a plan.  Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this section V(E), or (ii) limit the liability of the Debtor's professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

F.    **Post-Confirmation Jurisdiction of the Court**

Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, the Court will retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

1.    To determine the allowability, classification, or priority of Claims upon objection by the Debtor, and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

2.    To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person;

3.    To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate;

4.    To determine any and all applications for allowance of Fee Claims;

5.    To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

6.    To determine any dispute relating the Sale, the Bidding Procedures, and confirmation of the Sale and/or any other matter that in any way relates to the foregoing;

7.     To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to the Plan;

8.     To determine all Estate Causes of Action, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands;

9.     To enter a Final Order closing the Chapter 11 Case;

10.     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purposes;

11.     To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code;

12.     To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

13.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

14.     To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan, and the making of Distributions thereunder;

15.     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

16.     To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

17.    To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

18.    To approve any Distributions, or objections thereto, under the Plan;

19.    To approve any Claims settlement entered into or offset exercised by the Plan Sponsor; and

20.    To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code.

## VI.  CONFIRMATION OF THE PLAN

### A.    Introduction

The Bankruptcy Code requires the Bankruptcy Court to determine whether a plan of reorganization complies with the technical requirements of chapter 11 of the Bankruptcy Code. It further requires that a plan proponent's disclosures concerning such plan have been adequate and have included information concerning all payments made or promised in connection with the plan.

To confirm the Plan, the Court must find that all of these and certain other requirements have been met.  Thus, even if the requisite vote is achieved for each Class of impaired Claims, the Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan.  Some of these statutory requirements are discussed below.

**B.      Conditions to Confirmation and Effective Date**

The Plan may not be confirmed unless the Disclosure Statement has been approved by the Court.  The Effective Date may not occur, and thus the Plan will not become effective, unless the Confirmation Order becomes a Final Order and the Refinancing or Sale occurs.

If the Plan is confirmed, the Debtor expects the Effective Date to occur not later than seventy-five (75) days after the Confirmation Date.

**C.      Voting Procedures and Standards**

Holders of Claims in Classes that are "impaired" under the Plan (but not deemed to reject the Plan by virtue of receiving no Distributions thereunder) will receive a Ballot with this Disclosure Statement for the acceptance or rejection of the Plan.   Any Claim whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired."   Instructions on how to complete a Ballot and the deadline for voting on the Plan are contained in the solicitation materials accompanying this Disclosure Statement and the Plan.

The following procedures for allowance of Claims for purposes of voting on the Plan shall apply to votes upon the Plan:

(a)      <u>Disputed Filed Claims</u>.  With regard to a Claim that is the subject of an objection filed at least twenty (20) days prior to the Ballot Deadline, such Claim will be disallowed provisionally for voting purposes, except to the extent and in the manner that (i) the Debtor agrees that the Claim should be allowed for voting purposes in its objection to such Claim: or (ii) such Claim is allowed temporarily for voting purposes in accordance with Bankruptcy Rule 3018.

(b)     Claims Estimated for Voting Purposes.  With respect to a Claim that has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the amount and classification of such Claim will be that set by the Bankruptcy Court.

(c)     Wholly Unliquidated Claims.  A Claim recorded in the Schedules or in the Clerk's records as wholly unliquidated, contingent and/or undetermined will be accorded one vote, valued at one dollar, for the purposes of section 1126(c) of the Bankruptcy Code, unless the Claim is disputed as set forth in (a) above.

(d)     Late Claims.  With respect to a Claim as to which a proof of claim has not been timely filed (i.e., was filed after the Bar Date), the voting amount of such Claim (subject to any applicable limitations set forth below) will be equal to the amount listed, if any, in respect of such Claim in the Schedules, to the extent such Claim is not listed as contingent, unliquidated, or disputed, unless the Claim is disputed as set forth in (a) above.  If such Claim is either not listed in the Schedules, or is listed as contingent, unliquidated or disputed, then the Claim respecting such proof of claim will be disallowed provisionally for voting purposes.

(e)     Duplicate Claim.  A creditor will not be entitled to vote its Claim to the extent such Claim duplicates or has been superseded by another Claim of such creditor.

(f)     Undisputed Scheduled Claims.  With respect to a Claim that appears on the Schedules as undisputed, noncontingent and liquidated, and as to which no objection has been filed at least twenty (20) days prior to the Ballot Deadline, the amount and classification of such Claim shall be that specified in the Schedules unless superseded by an undisputed proof of claim.

(g)    Court Determined Claims.  With respect to a Claim for which an order has been entered reducing, reclassifying or allowing, the amount and classification of the Claim shall be that specified in such order.

The Ballots of creditors will be tabulated in accordance with the following procedures:

(i)    For the purpose of voting on the Plan, the Balloting Agent will be deemed to be in constructive receipt of any Ballot timely delivered to the address set forth above as designated for the receipt of Ballots cast on the Plan;

(ii)    Any Ballot received by the Balloting Agent after the Ballot Deadline shall not be counted;

(iii)    Pursuant to Bankruptcy Rule 3018(a), whenever a holder of a Claim submits more than one Ballot voting the same Claim prior to the Ballot Deadline, the last such Ballot sent and received shall count unless such holder has sufficient cause within the meaning of Bankruptcy Rule 3018(a) to submit, or the Debtor consents to the submission of, a superseding Ballot;

(iv)    If a Ballot does not include a Claim amount, the Ballot shall be deemed filed in the amount of a filed Claim, and if no Claim has been filed, in the amount of the Claim as specified in the Schedules, as long as the Claim is listed in the Schedules as undisputed, non-contingent or liquidated; otherwise, the Ballot shall not be counted.

(v)    If a holder of a Claim casts simultaneous duplicative Ballots voted inconsistently. then such Ballots shall not be counted;

(vi)    The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed;

(vii)    Any Ballot that is not signed shall not be counted;

(viii)   Any Ballot received timely by the Balloting Agent by electronic communication (i.e. email) shall be counted but signed Ballots received by the Balloting Agent by facsimile will not be counted;

(ix)   A holder of a Claim must vote all of its Claims within a particular Class under the Plan either to accept or reject the Plan and may not split its vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan, or that indicates both a vote for and against the Plan, will not be counted; and

(x)   Any Ballot that is timely received and executed but does not indicate whether the holder of the relevant Claim is voting for or against the Plan shall not be counted.

IF A BALLOT IS DAMAGED OR LOST OR IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE BALLOTING AGENT.

A VOTE MAY BE DISREGARDED IF THE COURT DETERMINES, AFTER NOTICE AND A HEARING, THAT SUCH ACCEPTANCE OR REJECTION WAS NOT MADE OR SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE WITH THE PROVISIONS OF THE BANKRUPTCY CODE.

Any impaired Class of Claims that fails to achieve the requisite "accepted" vote will be deemed to have rejected the Plan.

**D.    Acceptance**

The Bankruptcy Code defines acceptance of a plan by an impaired Class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of Claims of that Class that actually vote.  Acceptance of the Plan need only be solicited from

holders of Claims whose Claims are "impaired" and not deemed to have rejected the Plan. Except in the context of a "cram down" (i.e., confirmation of a plan that has not been accepted by all impaired classes), as a condition to confirmation of the Plan, the Bankruptcy Code requires that, with certain exceptions, each Class of impaired Claims accepts the Plan.

The Plan is predicated on the Voting Classes voting to accept the Plan. In the event the requisite vote is not obtained, the Debtor has the right, assuming that at least one Class of impaired Claims has accepted the Plan, to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan notwithstanding rejection by one or more Classes of impaired Claims if the Bankruptcy Court finds that the plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting class or classes. This procedure is commonly referred to in bankruptcy parlance as "cram down." If the Voting Classes vote to reject the Plan, the Debtor will seek a cram down of any such Class at the Confirmation Hearing.

E.    **Confirmation and Consummation**

At the Confirmation Hearing, the Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section 1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponents of the plan have complied with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponents under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

- The proponents have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy and the proponents must have disclosed the identity of any insider that the reorganized debtors will employ or retain, and the nature of any compensation for such insider.

- With respect to each class of impaired claims, either each holder of a claim of such class has accepted the plan, or will receive or retain under the plan on account of such claim, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Each class of claims has either accepted the plan or is not impaired under the plan.

- Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the order for relief in a case, of a value, as of the effective date, equal to the allowed amount of such claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan (unless, as here, such liquidation or reorganization is proposed in the plan).

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Classes not receiving any Distribution under the Plan, the Debtor believes that (i) the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, (ii) the Debtor has complied or will have complied with all of the requirements of chapter 11, and (iii) the Plan has been proposed in good faith.

Set forth below is a more detailed summary of the relevant statutory confirmation requirements.

### 1.    Best Interests of Holders of Claims

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an allowed claim of each impaired class of claims will receive or retain under the plan on account of such claim, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

In the event of a Refinancing, all Claims will be paid in full.  In the event of a Sale, the Claims will be paid in the priority order of the Bankruptcy Code and, therefore, the Debtor believes that this test is satisfied by the Plan.

### 2.    Financial Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the plan.  The Plan is a liquidating plan of reorganization.  Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

### 3.    Acceptance by Impaired Classes

A class is "impaired" under a plan unless, with respect to each claim in such class, the plan:  (i) leaves unaltered the legal, equitable and contractual rights to which the claim entitles the holder of such claim; or (ii) notwithstanding any contractual provision or applicable law which entitles the holder of such claim to demand or receive accelerated payment on account of a

default, cures any default, reinstates the original maturity of the obligation, compensates the holder for any damages incurred as a result of reasonable reliance on such provision or law and does not otherwise alter the legal, equitable or contractual rights of such holder based upon such claim. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

4.    **Cram Down**

**THE DEBTOR RESERVES THE RIGHT TO CRAM DOWN THIS PLAN AGAINST NON-ACCEPTING CLASSES OF HOLDERS OF CLAIMS.**

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code. Under the "cram down" provisions, upon the request of a plan proponent the Bankruptcy Court will confirm a plan despite the lack of acceptance by an impaired class or classes if the Bankruptcy Court finds that (i) the plan does not discriminate unfairly with respect to each non-accepting impaired class, (ii) the plan is fair and equitable with respect to each non-accepting impaired class, and (iii) at least one impaired class has accepted the plan. These standards ensure that holders of junior interests, such as stockholders, cannot retain any interest in the debtor under a plan of reorganization that has been rejected by a senior class of impaired claims or interests unless such impaired claims or interests are paid in full.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law. A plan does not discriminate unfairly if claims in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan. By establishing separate Classes for the

holders of each type of Claim and by treating each holder of a Claim in each Class identically, the Plan has been structured so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims. In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before any junior class may receive anything under the plan. In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receives more than payment in full on its claims.

With respect to a class of unsecured claims that does not accept the Plan, either (i) each holder of an unsecured claim in the dissenting class receives or retains under such plan property of a value equal to the allowed amount of its unsecured claim, or (ii) the holders of claims that are junior to the claims of the holders of such unsecured claims will not receive or retain any property under the plan. Additionally, the holders of claims that are senior to the claims of the dissenting class of unsecured claims receive no more than payment in full on their claims under the plan. The Plan is designed to satisfy these standards.

If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more of Classes of impaired Claims have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Debtor will request that the Bankruptcy Court confirm the Plan over the dissenting votes of such Classes in accordance with section 1129(b) of the Bankruptcy Code. The Debtor

believes that the Plan satisfies the "cram down" requirements of the Bankruptcy Code. The Debtor may seek confirmation of the Plan over the objection of dissenting Classes, as well as over the objection of individual holders of Claims who are members of an accepting Class.

### 5.    Classification of Claims

The Debtor believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan of reorganization place each claim into a class with other claims which are "substantially similar."

## VII.  CERTAIN RISK FACTORS TO BE CONSIDERED

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.   THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

### A.    Risk That Distributions Will Be Less Than Estimated

The projected distributions and recoveries set forth in this Disclosure Statement are based on the Debtor's estimate of Allowed Claims and Cash available for Distribution. There can be no assurance that the estimates will prove accurate.

### B.    Bankruptcy Risks

### 1.    Objection to Classifications

Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims of such class. The Debtor believes that the classification of Claims under the Plan complies with the requirements

set forth in the Bankruptcy Code. However, there can be no assurance that the Court would reach the same conclusion.

### 2.    Risk of Non-Confirmation of the Plan

Even if the Voting Classes accept the Plan, the Plan might not be confirmed by the Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization unless, as here, such liquidation is proposed in the plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies all the requirements for confirmation of a liquidating plan of reorganization under the Bankruptcy Code. There can be no assurance, however, that the Court would also conclude that the requirements for confirmation of the Plan have been satisfied.

## VIII.  TAX CONSEQUENCES

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR WITH RESPECT THERETO.

NOTHING HEREIN CONSTITUTES TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED HEREIN. ACCORDINGLY, EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR

REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

## IX. CONCLUSION

The Debtor believes that confirmation and implementation of the Plan will provide each creditor with a greater recovery than it would receive if the Debtor were to liquidate and distribute its assets under chapter 7, in which case there would likely be a delay in making distributions to creditors and creditors would likely receive smaller distributions. Thus, the Debtor recommends confirmation and implementation of the Plan as the best possible outcome for creditors.

The Debtor urges holders of impaired Claims to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Ballot Deadline.

DATED:      July 23, 2019

753 NINTH AVE REALTY LLC

By:    /s/ Marina Koustis
     Name: Marina Koustis
     Title: Managing Member of Sole Member


CULLEN AND DYKMAN LLP
Attorneys for the Debtor


By:/s/ Bonnie Pollack
     Matthew G. Roseman, Esq.
     Bonnie L. Pollack, Esq.
     100 Quentin Roosevelt Boulevard
     Garden City, New York 11530
     (516) 357-3700