**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
(646) 454-4168 - facsimile
Jerold C. Feuerstein, Esq.
Stuart L. Kossar, Esq.
jfeuerstein@kanfllp.com
skossar@kandfllp.com

*Attorneys for 72nd Ninth LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Case No: 19-11201-mkv |
| 753 Ninth Ave Realty, LLC, | Chapter 11 |
| | Hon. Mary Kay Vyskocil |
| Debtor. | United States Bankruptcy Judge |

------------------------------------------------------------x

**72nd NINTH LLC'S OBJECTION TO DEBTOR'S MOTION FOR APPROVAL OF DISCLOSURE STATEMENT AND RELATED RELIEF**

72nd Ninth LLC (the "Secured Creditor" or "72nd Ninth"), a secured creditor and mortgagee of the above-named debtor, 753 Ninth Ave Realty, LLC (the "Debtor") by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this Objection (the "Objection") to the Debtor's Application filed on July 23, 2019 [ECF No. 53] the ("Motion") for an entry of an order: (i) Approving the Disclosure Statement filed on July 23, 2019 [ECF No. 52] (the "Disclosure Statement") relating to Debtor's Chapter 11 Plan filed on January 23, 2019 [ECF No. 51] (the "Plan"); (ii) establishing voting record holder date; (iii) approving solicitation procedures, forms of ballots, and manner of notice; and (iv) fixing the deadline for filing objections to confirmation of the Plan. In support of its Objection, the Secured Creditor respectfully represents as follows:

1

# PRELIMINARY STATEMENT

1.  The Secured Creditor objects to this Court's approval of the Disclosure Statement because the Disclosure Statement lacks adequate information, including, without limitation, any feasible exit strategy that would permit the Debtor with the means necessary to implement the Plan and emerge from bankruptcy. In short, the Disclosure Statement stands only for the proposition that the Debtor intends to do a variety of different things. However, it is unclear how Debtor will emerge from bankruptcy.

2.  Debtor intends to either refinance its obligations to Secured Creditor (the "Refinance") or (in the event the Refinance fails) proceed to public auction. If Debtor refinances, it intends to pay Secured Creditor in full or at an agreed upon amount. Debtor also explicitly reserves its right to object to Secured Creditor's claim. In addition, Debtor fails to disclose the terms of the Refinance. As such, there is no means for Secured Creditor to determine what (if anything) it would receive in the event of the Refinance. The Plan's vagueness at to the Refinance not only establishes the Plan could not be confirmed but that the Disclosure Statement fails to contain adequate information required for approval.

3.  If Debtor does not obtain a commitment for the Refinance on or before the date of the Confirmation Hearing, the Debtor will then proceed with a sale (the "Sale") by public auction of the property known as 753 Ninth Avenue, New York, New York (the "753 Property"). Upon a sale, Debtor intends to pay Secured Creditor approximately $9,796,595.00 when its pre-prepetition claim consisting of two (2) cross-collateralized and cross-defaulted loans total $17,139,183.54 (*See* Claim No. 4-1). However, the Disclosure Statement fails to provide for any basis for why the Secured Creditor should reduce its claim by over $7,000,000.00.

4.  As the Disclosure Statement is devoid of information of a kind that would enable a

2

hypothetical reasonable investor typical of holders of claims or interest of the relevant class to make an informed judgment about the Plan, the Disclosure Statement should not be approved.

## BACKGROUND

**The Loans[1]**

5. As further detailed in Secured Creditor's Proof of Claim (Claim No. 4-1) (the "Proof of Claim"), Secured Creditor's claim arises from two loans that are Cross-Collateralized and Cross-Defaulted.

6. On February 27, 2014, Doral Bank ("Doral"), 72nd Ninth's predecessor in interest, loaned Debtor the principal sum of $4,600,000.00 (the "753 Loan") pursuant to a Note that was secured by a mortgage encumbering the 753 Property.

7. Doral also loaned a Debtor affiliated entity, 212 East 72nd Street, LLC ("212 East") the principal sum of $3,500,000.00 (the "212 Loan", and together with the 753 Loan, collectively, the "Loans") pursuant to a Note secured by real property located at 212 East 72nd Street, New York, New York (Block 0146, Lot 42) (the "212 Property", and together with the 753 Property, collectively, the "Properties").

8. The Loans were guaranteed by Evanthia Koustis, Marina Koustis and Sofia Koustis (the "Guarantors", and together with Debtor and 212 East, collectively, the "Borrowers").

9. In addition, the Loans were cross-collateralized and cross-defaulted pursuant to a Cross-Default Agreement.

10. Thereafter, the Loans were ultimately assigned to Secured Creditor.

---

[1] In the interest of judicial economy, a brief pre-petition background is provided for this Court's reference. For a more detailed recitation of the pre-petition factual and procedural background of this matter, the Court is respectfully referred to the statements and exhibits contained in Secured Creditor's Opposition to Debtor's Application for special counsel and requests same be incorporated by reference.

**The Default and Foreclosure Action**

11. Borrowers failed to comply with the terms of the 753 Loan by failing to make the monthly principal and interest payment due December 1, 2014 and defaulting in connection with the 212 Loan which is cross defaulted and cross collateralized with the 753 Loan (the "753 Default").

12. Borrowers also failed to comply with the terms of the 212 Loan by failing to make the monthly principal and interest payment due December 1, 2014, failing to pay the full real estate taxes due July 1, 2014, January 1, 2015 and thereafter, and defaulting in connection with the 753 Loan which is cross defaulted and cross collateralized with the 212 Loan (the "212 Default," and together with the 753 Default, collectively, the "Defaults").

13. On January 19, 2016, due to the Defaults, the Secured Creditor commenced a Foreclosure Action by filing a Summons, Verified Complaint and Notice of Pendency in the New York County clerk's Office under Index No. 850009/2016 (the "Foreclosure Action").

14. On July 21, 2016, 72nd Ninth filed a Motion for Summary Judgment ("MSJ"), *inter alia*, to strike the answer to the Complaint filed by Borrowers (the "Answer") and have a referee appointed to compute the amount due and owing under the Loans

15. On April 20, 2017, the Court entered a Decision and Order ("Order"), which among other things, granted the MSJ and dismissed the Answer.

16. On January 29, 2019, by Decision and Order, the First Department, Appellate Division affirmed the Order. *See 72nd Ninth LLC v. 753 Ninth Avenue Realty LLC,* 168 A.D.3d 597 (1st Dep't 2019)

17. On November 27, 2017, the Court entered an Order of Reference which appointed a referee to compute the amount due under the Loans.

18. On November 7, 2018, the Referee's Report of Amounts Due was executed by the Referee.

19. On September 14, 2018, 72nd Ninth and Borrowers entered into a Stipulation of Amounts Due (the "Stipulation of Amounts Due") agreeing as of July 18, 2018 to the amount due under the Loans. As of July 18, 2018, 72nd Ninth was owed $8,913,278.56 under the 753 Loan and $6,688,207.94 under the 212 Loan. Borrowers did not contest the mathematical calculations set forth in the Stipulation of Amounts Due including the calculations of the default interest. However, Borrowers reserved their right to contest the imposition of default interest solely on equitable grounds.

20. Thereafter, Secured Creditor filed an application for a judgment of foreclosure and sale and another application to appoint a receiver. However, a decision was not issued on these applications due to the Debtor's instant bankruptcy filing.

The Bankruptcy Case

21. On April 18, 2019, the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

22. On April 18, 2019, Debtor filed a Motion seeking, *inter alia*: (a) Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 361 and 363 of Chapter 11 of the Bankruptcy Code and (b) approving the form of adequate protection provided to the Secured Creditor pursuant to 11 U.S.C. §§ 361 and 363 [ECF No. 6].

23. On May 20, 2019 Debtor field an application for an entry of an order pursuant to 11 U.S.C. 327(e) of authorizing the retention and employment of Kishner Miller Himes P.C. ("KMH") as special counsel to the Debtor [ECF No. 29]

24. On June 27, 2019, this Court approved a Stipulation between Debtor and Secured Creditor authorizing the use of Cash Collateral pursuant to 11 U.S.C. §§ 361 and 363 [ECF No. 49].

25. On July 23, 2019, Debtor filed the Motion, Disclosure Statement and Plan [ECF Nos. 51-53].

26. On August 8, 2019, this Court entered an order authorizing KHM as special counsel which incorporated and which resolved objections raised by the Secured Creditor and the United States Trustee [ECF No. 56]

## ARGUMENT

## POINT I

### DEBTOR'S DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION

27. 11 U.S.C. § 1125(a) requires the proponent to provide a disclosure statement containing "adequate information" which is defined as :

> "Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant class to make an informed judgment about the plan…" Id.

11 U.S.C. § 1125(a)(1).

28. Full and fair disclosure is the foundation of Chapter 11 Bankruptcy and the adequacy of information contained in the disclosure statement is of paramount importance. *See*, *e.g., In Re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[o]f prime importance in the reorganization process is the principle of disclosure"); *Oneida Motor Freight Inc v. United Jersey Bank,* 845 F.2d 414, 417 (3d Cir. 1998) ("[t]he importance of full disclosure is underlaid

6

by the reliance placed up the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'"); *In Re Galerie Des Monnaies, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.NY. 1985) ("preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 Debtor").

29. A disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988); *see also In re Ferretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (disclosure statement must "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution"). In particular, a disclosure statement must provide enough information for parties in interest to understand the financial ramifications of the plan based on the particular facts and circumstances of the case at hand. *See, e.g., In re McLean Indus., Inc.*, 87 B.R. 830, 834-35 (Bankr. S.D.N.Y. 1987); *In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (S.D.N.Y. 1995).

30. As shall be further stated below, the Disclosure Statement is devoid of information of a kind that would enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant class to make an informed judgment about the Plan, the Disclosure Statement should not be approved.

**A.    There is no disclosure as to the whether plan is feasible as its unclear as to what Secured Creditor and other creditors can expect to receive under the Plan**

31. The Disclosure Statement lacks any information to permit the Secured Creditor or any other impaired creditor with information sufficient to understand how the Debtor will feasibly implement the Plan.

7

32. As stated above, Debtor seeks to refinance. However, there are no terms disclosed for the Refinance. In addition, Debtor seeks to either pay Secured Creditor in full or at an agreed upon amount. Moreover, Debtor also reserves the right to object to Secured Creditor's claim. As such, the Disclosure Statement fails entirely to provide the Secured Creditor with information about what it stands to collect from the Debtor if the Debtor's Plan is confirmed because there are no refinancing terms or clarity relating to Secured Creditor's payment.

33. The Plan's uncertainty implicates all claims. Here, Secured Creditor is the largest creditor, if the amount of proceeds it receives under the plan changes, it can affect the claims of all other creditors.

34. Adding to more uncertainty, the Disclosure Statement generically provides that "the Debtor shall have the right to object to the allowance of any Claim within 60 days of the effective date" (*See* Disclosure Statement, Art. IV, § E). However, any attempt by the Debtor to object to the Secured Creditor's claim would be extremely limited. As stated above, in the Foreclosure Action, the State Court granted Secured Creditor's MSJ striking the Answer filed on behalf of Borrowers (*See* Supra, ¶¶ 14, 15). The First Department then affirmed the MSJ decision on appeal (*See* Supra, ¶ 16). Thereafter, pursuant to the Stipulation of Amounts Due, the parties agreed to the amounts due on the Loans including the calculations of the default interest (*See* Supra, ¶ 19). However, Borrowers reserved their right to contest the imposition of default interest solely on equitable grounds (*See* Supra, ¶ 19). Notably, the Disclosure Statement omits any reference to the Stipulation of Amount Due and any potential equitable claims regarding default interest.

35. Debtor's Plan states Debtor "intends to object to the Lender Secured Claim to the extent that Lender seeks to be paid default interest subsequent to the Petition Date and also reserves the right to object to the amount of the Lender's post-petition fees and expenses" (*See* Plan, § 1.46).

8

However, Debtor fails to set forth any basis for an objection to post-petition default interest, fees or expenses. Accordingly, the Disclosure Statement fails to provide adequate information regarding potential objections to Secured Creditor's claim preventing Secured Creditor and other creditors to make an informed judgment about the Plan.

36. Debtor seeks to alleviate the uncertainty under the Plan by setting forth that Debtor must have a commitment to refinance by the Confirmation Hearing and then close within forty-five (45) days of entry of the confirmation order. However, these deadlines do not permit any disclosure as to the Refinance Terms or what Secured Creditor would stand to receive in the event of the Refinance.

37. As a result, the Disclosure Statement is devoid of adequate information that would enable the Secured Creditor and other creditors to make an informed judgment about the Plan. Accordingly, the Disclosure Statement should not be approved.

**B.    There is no disclosure as to Debtor's ability to refinance.**

38. The Disclosure Statement fails entirely to quantify in any manner how the Debtor believes that it would be in a position to repay a loan from a new lender in connection with the Refinance.

39. Notably, the Disclosure Statement fails to discuss any of the Debtor's attempts to secure refinancing or what it believes a newly refinanced loan would require from the Debtor.

40. Without any basis for what the Debtor believes the terms of a new loan to be, in the case of the Refinance, the Debtor fails to provide this Court or its creditors with a feasible alternative to the Loans it presently has with the Secured Creditor.

41. As a result, due to the lack of disclosure as to Debtor's ability to complete the Refinance, the Disclosure Statement is devoid of information of a kind that would enable a

9

hypothetical reasonable investor typical of holders of claims or interest of the relevant class to make an informed judgment about the Plan. Thus, the Disclosure Statement should not be approved.

**C.    There is no disclosure regarding the 753 Property, 212 Property and the Sale**

42.    The Disclosure Statement fails to advise whether the Debtor has been actively marketing either the 753 Property of 212 Property or what offers it has received in connection with any such purchase proposals. In addition, the Disclosure Statement fails to indicate what treatment the tenants at the 753 Property will receive, or how confirmation of the Debtor's Plan will impact tenants presently residing at the Property (e.g. whether the tenants will continue to reside at the Property and what impact confirmation of the Plan will have on any existing leases they may have).

43.    As a result, due to the lack of disclosure as to the 753 Property, 212 Property, and the Sale, the Disclosure Statement is devoid of information of a kind that would enable the Secured Creditor and other creditors to make an informed judgment about the Plan. Accordingly, the Disclosure Statement should not be approved.

## POINT II

### DEBTOR'S DISCLOSURE STATEMENT SHOULD NOT BE APPROVED AS PLAN IS NOT CONFIRMABLE

44.    Courts routinely hold that if a plan is unconfirmable as a matter of law, the related disclosure statement should not be approved. *In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) ("If the plan is patently unconfirmable on its face, the application to approve the disclosure itself must be denied as solicitation of the vote would be futile"); *In re Filex, Inc.*, 116 B.R. 37, 40-41 (Bankr. S.D.N.Y. 1990) (stating that "this court will not approve a disclosure statement for an admittedly unconfirmable plan").

45.    While a hearing on the Disclosure Statement is not a hearing on plan confirmation, a disclosure statement should be disapproved where the plan is not capable of being confirmed,

because the bankruptcy court's approval of a disclosure statement is an early step in the confirmation process. *In re 266 Washington Associates*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992). In addition to the requirement that the disclosure statement contain adequate information, a bankruptcy court should not approve a disclosure statement if the proposed plan which it describes is incapable of confirmation. *See, e.g., In re GSC, Inc.,* 453 B.R. 132, 157 n. 27 (Bankr. S.D.N.Y. 2011), *citing In re Quigley Co.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) ("An unconfirmable plan is grounds for rejection of the disclosure statement; a disclosure statement that describes a plan patently unconfirmable on its face should not be approved."). Furthermore, a court may deny approval of a disclosure statement, even if it is not by itself deficient, if a debtor's plan has no hope of being confirmed. *In re Forest Grove, LLC*, 448 B.R. 729, 736 (Bankr. D.S.C. 2011). Here, as further stated below, the Plan is patently unconfirmable. As such, the Disclosure Statement cannot be approved.

**A.     The Plan is not confirmable as it is not in the best interest of creditors**

46.     To confirm a plan, the Debtor must satisfy the "best interest" test set forth in Bankruptcy Code Section 1129(a)(7). The best interest test is designed to protect individual rejecting and non-voting members of an impaired class by establishing the minimum that they must receive or retain under the plan. As stated above, the Plan fails to set forth with any certainty what the Secured Creditor will received under the Refinance. There is no basis to confirm a plan in which it is unclear as to what Secured Creditor or other Creditors will receive from the Refinance.

47.     In addition, the Plan provides that Debtor will be released from all claims. This would present the possibility of Debtor paying down the 753 loan but avoiding contractual

obligations for the 212 Loan despite the Loans being cross-defaulted. There is no explanation for this release.

48. As such, the Plan is not confirmable as it is not in the best interest of creditors.

**B. The Plan is Not Feasible**

49. To confirm a plan, the Debtor it must be feasible. The Debtor must prove that the plan is feasible under Bankruptcy Code § 1129(a)(11). "As the Second Circuit explained, the key inquiry is whether, as a practical matter, provisions specified in the proposed plan of reorganization can be done post confirmation. *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978); *In re Greene*, 57 B.R. 272, 277–78 (Bankr. S.D.N.Y. 1986). The purpose of the feasibility test is "'to prevent confirmation of visionary schemes which promise creditors and equity holders more under a proposed plan than the debtor can possibly attain after confirmation.... [W]here the financial realities do not support the proposed plan's projections or where proposed assumptions are unreasonable, confirmation of the plan should be denied." *In re Young Broadcasting, Inc., et al.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (citations omitted). Additionally, it is well-settled that the Debtor, as the proponent of the Chapter 11 plan bears the burden of proving the essential elements of confirmation, including the Plan's feasibility, and must do so by a preponderance of the evidence. 11 U.S.C. § 1129(a)(11). *In re Jennifer Convertibles, Inc.*, 447 B.R. 713, 724 (Bankr. S.D.N.Y. 2011)

50. Here, as stated above, the plan is not feasible as it is unclear how Debtor will implement its plan based upon the vague and speculative Refinance. In addition, there is no way for Secured Creditor or other creditors to know what they will receive upon the Refinance. Accordingly, the Plan is not feasible.

## RESERVATION OF RIGHTS

51.     In the event that the Disclosure Statement is approved, the Secured Creditor reserves its right to re-assert these objections set forth herein, in addition to any and all other objections, in connection with the hearing on the confirmation of the Debtor's Plan.

**WHEREFORE**, 72nd Ninth LLC, respectfully requests that Debtor's Motion be denied in its entirety and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 14, 2019                          **KRISS & FEUERSTEIN LLP**

                                    By:    */s/ Jerold C. Feuerstein*
                                           Jerold C. Feuerstein, Esq.
                                           Stuart L. Kossar, Esq.
                                           360 Lexington Avenue, Suite 1200
                                           New York, New York 10017
                                           (212) 661-2900
                                           jfeuerstein@kanfllp.com
                                           skossar@kandfllp.com

                                           *Attorneys for 72nd Ninth LLC*