CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for 753 Ninth Ave Realty LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                         :

In re:                                 :    Chapter 11
                                           :

753 NINTH AVE REALTY LLC,           :    Case No. 19-11201 (MKV)
                                           :
                                           :

                     Debtor.            :
                                           :
---------------------------------------------------------------- x

### REPLY TO OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT

TO THE HONORABLE MARY KAY VYSKOCIL, UNITED STATES BANKRUPTCY
JUDGE:

       753 Ninth Ave Realty LLC (the "Debtor"), debtor and debtor-in-possession in the above-
captioned Chapter 11 case, as and for its reply to the objection (the "Objection") of 72nd Ninth
LLC (the "Lender") to approval of the Disclosure Statement for Chapter 11 Plan filed by the
Debtor (the "Disclosure Statement"), filed by the Debtor, respectfully alleges as follows:

### BACKGROUND

       1.      On April 18, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for
relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtor
remains a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

       2.      An official committee of unsecured creditors has not been appointed in this case.

3.        On July 23, 2019, the Debtor filed its Chapter 11 Plan (the "<u>Plan</u>") and Disclosure Statement in this chapter 11 case.  On August 14, 2019, the Lender filed the Objection. For the reasons addressed herein, the Objection should be overruled and the Disclosure Statement approved.

<b><u>REPLY TO OBJECTION</u></b>

4.        The Lender has objected to the Disclosure Statement on a few bases, namely: (a) the terms of the Refinancing[1] are not disclosed; (b) there is no disclosure as to the ability to obtain, and the feasibility of, the Refinancing; (c) because the Debtor reserves the right to object to certain components of the Lender Secured Claim, it is unclear as to what the Lender (and therefore other creditors) will receive under the Plan; (d) the Debtor does not provide the basis for the reserved objection to the Lender Secured Claim; (e) the treatment of the tenants in the event of a sale is not disclosed; (f) the Plan does not satisfy section 1129(a)(7) of the Bankruptcy Code; and (g) the Debtor is being released from obligations in connection with the 212 Note. None of these objections, to the extent even valid, are sufficient to deny approval of the Disclosure Statement.

5.        Preliminarily, the Debtor endeavored, and believes it succeeded, in making the Plan as objection-proof as possible. The Debtor is not seeking a lengthy time period to obtain Refinancing; the Debtor is not seeking to avoid the cross-collateralization of the 212 Note by the 753 Property, the Debtor is not seeking to have creditors paid, in a sale, from the proceeds of the sale before payment of the 212 Note, the Debtor is not objecting to the pre-petition amounts due to the Lender, the Debtor's members are not seeking any recovery before its creditors (including the Lender on the 212 Note). The Debtor filed its Plan and Disclosure Statement when it did in order to comply with the time requirements in the Cash Collateral Order. What the Debtor *is*

---

[1] Any capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Plan and Disclosure Statement.

seeking under the Plan is certainly not novel in chapter 11 cases:  a definitive time to obtain the

Refinancing, which it has been working on (a fact of which the Lender is fully aware); if it cannot,

the 753 Property will be sold.

6.      The Debtor made clear in the Plan and Disclosure Statement that the Refinancing

commitment must be received by no later than the Confirmation Hearing and that the commitment

shall provide for a closing within 45 days of entry of the Confirmation Order.  Thus, there is finality

with respect to the Refinancing option in the Debtor's Plan.  There is also finality if the Debtor

obtains a commitment but fails to close the Refinancing within 45 days of entry of the

Confirmation Order.  In both circumstances, the Debtor will proceed directly to a Sale of the 753

Property in accordance with the Bidding Procedures annexed to the Disclosure Statement within a

date certain.  As a result, the Plan is structured so that the Lender Secured Claim will be paid either

by refinance or sale by the end of 2019. Notwithstanding the Objection, the structure of the Plan

makes it confirmable, and the disclosures with respect to that structure are more than adequate.

The Terms of, and Ability to Obtain, the Refinancing

7.      Pursuant to the Objection, the Lender believes that the Disclosure Statement should

not be approved because the terms of the Refinancing and the ability of the Debtor to obtain

Refinancing are not disclosed therein. It is true that there are no Refinancing terms in the

documents, because there is not yet a commitment. The Debtor has been in discussions with several

lending sources. When there is a Refinancing offer that meets the objectives in this case, it will be

put before the Court and provided to the Lender. Under the Plan, that must occur by the

Confirmation Hearing. There will be no confirmation based on a "speculative" Refinancing, only

an actual one. In several places in the Objection the Lender complains that it cannot know what it

will be paid in a Refinancing without further disclosure; as set forth clearly in the Plan and

Disclosure Statement, however, the Lender Secured Claim will need to be paid in full under such

a Refinancing unless the Lender agrees otherwise. That is patently clear from the documents. For the Lender to plead uncertainty as to what it will be paid in a Refinancing is incongruous. The only portion of the Lender Secured Claim that is subject to objection, as addressed below, is post-petion interest and fees.

8.      While of course the Debtor would like to have a commitment in hand at this juncture, the fact that it does not (or may not) have such a commitment is not sufficient to warrant denial of the Disclosure Statement and premature denial of Plan confirmation. Yes, the Refinancing is speculative. But it is not a lifelong speculation. The wait, as they say, will be over by the Confirmation Hearing.  If there is no commitment by the Confirmation Hearing, the Debtor will proceed to the Sale. If there is a commitment which satisfies the criteria in this case (primarily payment of the Lender Secured Claim), the Debtor cannot imagine that the Lender will object to such a Plan. If there is not a commitment, it is also unlikely that the Lender will object to a Sale (further addressed below). The terms of an eventual Refinancing are important, but the lack of terms at this stage should not sound the death knell of this case. Whether obtaining a commitment is feasible remains to be seen, but if one is not obtained the Debtor will proceed to Sale, rendering the feasibility of obtaining the commitment moot.

Reservation of Rights to Object to the Lender Secured Claim

9.      The Lender also maintains that the Disclosure Statement cannot be approved since the Plan reserves to the Debtor the right to file an objection to certain portions of the Lender Secured Claim, but does not state the basis for such objection or the effect of such objection on the distribution to the Lender, and other creditors by extension, under the Plan.  First, there is no requirement of which the Debtor is aware that mandates that the basis for a claim objection be

stated in a Disclosure Statement.[2] Indeed, virtually all Disclosure Statements and Plans provide a reservation of rights for claims objections, none of which provide the basis for such objections. Nor is there a requirement that the Debtor object to the Lender Secured Claim before the confirmation process.

10.      As to the effect of such an objection on distributions under the Plan, the Lender's Objection is baseless. The Plan and Disclosure Statement make clear that any objection would only be as to post-petition default interest and legal fees. The Lender is fully aware of what such components amount to, and what the effect of an objection would be on its distribution. To state that the "Disclosure Statement fails entirely to provide the [Lender] with information about what it stands to collect from the Debtor if the Debtor's Plan is confirmed" is preposterous. As to other creditors, either they will be paid in full through a Refinancing, or will likely not get paid in a Sale. In a Sale, their distribution can only increase, not decrease,  if the Debtor successfully reduces the Lender's post-petition claim amount. It is hard to imagine that creditors will not be able to determine whether to vote in favor of or against the Plan knowing the exact amount that their distribution may increase, considering that they will not likely get paid at all in a Sale. Furthermore, the Debtor cannot even make disclosure as to these amounts, since they have not been disclosed by the Lender. Thus, the fact that the Debtor reserves the right to object to the Lender's post-petition claim amounts is not grounds to deny approval of the Disclosure Statement.

Plan Effect on Tenants

11.      The Plan does in fact provide for the treatment afforded to tenants despite the Lender's assertion otherwise. The Plan, in Article IX, provides that in a Refinancing, the leases

---

[2] The Lender alleges that the right of the Debtor to object to its claim is extremely limited since certain amounts were established by decision of the State Court in the Foreclosure Action. A clear reading of the Disclosure Statements demonstrates that the Debtor is NOT seeking to object to pre-petition claim amounts, and the decision of the State Court is therefore irrelevant.

with tenants will be assumed. Since the Debtor has no payment obligation under such leases, there will be no cure obligation and therefore there is no requirement of such in the Plan. The Plan also provides that in the event of a Sale, the leases will be rejected upon the closing of the Sale, and rejection claims will be treated, properly, as unsecured claims. If a prospective buyer wishes to discuss assumption and assignment of the tenant leases, the Debtor would be happy to have such discussions. If the Lender wants to have those discussions, all it needed to do was ask[3]. That said, this basis for the Lender's objection is without merit.

Section 1129(a)(7) of the Bankruptcy Code

12.    In addition, the Lender asserts that the Plan cannot satisfy section 1129(a)(7) of the Bankruptcy Code, and as a result the Disclosure Statement should not be approved. This too, is without merit. Section 1129(a)(7) provides that a holder of an impaired claim either vote to accept the Plan or receive a distribution of at least as much as it would in a liquidation. Since all creditors will receive at least as much as they would in liquidation, the Lender has no basis for this Objection. In the event of a Refinancing, all creditors will be paid in full (or in a lesser amount as they agree to), thereby satisfying section 1129(a)(7). In the event of a Sale, creditors will be paid in the order of priority and, therefore, will be paid as much as they would receive in a liquidation (since it *would be* a liquidation) as well. The Debtor is unclear as to the reasoning behind this Objection.

Release of Obligations under 212 Note

13.    Finally, the Lender claims in the Objection that the Debtor is being improperly released from its alleged obligations under the 212 Note. This is not only a misstatement of the Debtor's obligations, but is also incorrect. The Lender apparently misconceives the effect of the

---

[3] It should be noted that on several occasions the Debtor asked the Lender for comments and proposed changes, but the Lender never provided same.

parties' cross-collateralization agreement. Through that agreement, the 753 Property secures not only the 753 Note but also the 212 Note, and the 212 Property secures not only the 212 Note but also the 753 Note. *However, the Debtor did not guaranty the 212 Note, nor did 212 East guaranty the 753 Note.* Thus, in the event that there is not sufficient equity in the 753 Property to pay the 212 Note in full, there is no further recourse of the Lender *against the Debtor* for amounts due under the 212 Note. When the obligations of the Debtor are viewed correctly, the Lender's Objection is baseless.

14.    Under the Refinancing the Lender will be paid in full under both notes (the definition of Lender Secured Claim makes is clear that it includes all obligations), so that cannot be an issue for the Lender as to a release. Under the Sale, after payments of Secured Real Estate Tax Claims (which prime the Lender), the amounts due under the 753 Note and 753 Mortgage get paid. As is clearly set forth in the Plan and Disclosure Statement, after such payments, *the excess proceeds will be paid to the Lender for amounts due under the 212 Note*. This cannot be an issue for the Lender either. The release being provided to the Debtor releases any claims against the Debtor. Since the Lender will have no other claims *against the Debtor*, this also cannot be an issue.

15.    The Debtor is unclear as to the exact basis for this Objection, but since the Debtor is only being released from obligations against it (which the 212 Note is not one) and the proceeds of the 753 Property will be paid to the Lender toward the obligations under both Note, this Objection fails.

## <u>CONCLUSION</u>

16.    The Lender is hard pressed to establish a basis as to why the Disclosure Statement should not be approved and the Plan should not proceed towards confirmation.  Quite frankly, the

Debtor questions the Lender's motives in objecting to approval of the Disclosure Statement and the terms of the Plan.  As has been discussed with Lender's counsel on several occasions already, why does it matter if the Refinancing is speculative?  The Lender will be out of this case 45 days after Confirmation.  If the Debtor does not get the Refinancing, the Lender is out.  If the Debtor does get the Refinancing, the Lender is out.  And more importantly, what is the Lender's alternative?  Certainly it can attempt to get the automatic stay lifted, which the Debtor does not believe is a given.  But even if it does, the eventual foreclosure of the Debtor's property will take significantly longer than the Sale proposed in the Plan.  Because of this, the Debtor has good reason to question the Lender's motives.

17.    As set forth above, the Debtor believes that notwithstanding the Lender's Objection, the Disclosure Statement contains adequate information for creditors to make an informed decision on voting on the Plan, that the Disclosure Statement should be approved and that the Confirmation process should continue.  Thus, the Debtor respectfully requests that the Court overrule the Lender's Objection and approve the Disclosure Statement in this case.

DATED:  Garden City, New York          CULLEN AND DYKMAN LLP
        August 19, 2019          Attorneys for the Debtor


        By:/s/ Bonnie Pollack_____
        Matthew G. Roseman, Esq.
        Bonnie L. Pollack, Esq.
        100 Quentin Roosevelt Boulevard
        Garden City, New York 11530
        (516) 357-3700